[Civ. No. 2222.   Fourth Appellate District.—March 10, 1939.]

HENRIETTA CAIN, Appellant, v. PHIL MARQUEZ, Defendant; AL WEEDALL, Respondent.

Borton, Petrini & Conron for Appellant.

Brittan & Mack for Respondent.

GRIFFIN, J.—This is an action in which Henrietta Cain instituted suit against Phil Marquez and Al Weedall for damages arising out of the death of Frank Cain, resulting from injuries sustained in an accident that took place at the intersection of Owens and Nile Streets in the city of Bakersfield on the evening of October 24, 1936. Plaintiff and appellant is the widowed mother of Frank Cain, the deceased, who was 17 years of age at the time of his death. Appellant is the sole heir at law of the deceased.

The accident grew out of a collision between a bicycle being ridden by Frank Cain and an automobile driven by Phil Marquez. Marquez was an employee of respondent Al Weedall. At the time of the accident Marquez was en route to the shop of Al Weedall, which was located at 2814 Chester Street. He had left the shop at about 6 o'clock P. M. to go to the home of his parents on Hoover Street. The purpose of that trip was to obtain a micrometer and some other tools which were to be used in work upon a crank shaft at the Weedall shop. It was his intention to return to the shop that same evening to finish the crank shaft job. Upon arriving at his parents' house Marquez picked up these tools

and then drove his car over to 1803 Oregon Street where he ate dinner. He spent about a quarter of an hour eating dinner and then started to drive back to the Weedall shop and after proceeding 9 blocks was involved in this collision.

It appears from a map of the city of Bakersfield received in evidence and from other testimony that Marquez had driven his car south on Chester Avenue from Weedall's garage for about 16 blocks, then he turned east on California Street for about 13 blocks, then south on Union Avenue for 10 blocks, and thence east on Graham Street six more blocks to his parents' home where he picked up the tools belonging to him and which were to be used by him that evening in repair work at the garage. Instead of retracing his route from his parents' home to the garage, he continued in an easterly direction about three blocks, north four or five blocks, then, in order to avoid a cemetery, he turned left about two blocks to pass it, and continued northeasterly on Baker Street about 17 blocks to the corner of Nile Street. He then turned easterly on Nile Street, went about 11 blocks and turned north one block to the place where he roomed and boarded. Leaving there to return to the garage, he drove one block south to Nile Street and turned west along his original course on Nile Street, on which he proceeded 8 blocks to the point where the accident happened. The general course of the route taken and contemplated was described as similar to an equilateral triangle. The distance from the garage to the place where the tools were obtained was about two or three miles. It was a like distance from there to the boarding house and a similar distance from there to the garage.

It was customary for Marquez to use his own car while transacting his employer's business. It was also customary for him to work in the shop at night when work remained to be done. He worked in the general capacity of a mechanic, bookkeeper, collector and solicitor of business and was next in charge of the shop under the owner, Al Weedall, with general authority. He had no stipulated hours of employment but his duties required him to get the work out expeditiously.

At the conclusion of plaintiff's case the defendant Al Weedall moved for a nonsuit on the ground that at the time

of the accident the defendant Marquez was not acting in the scope of his employment. The motion was granted. Counsel for plaintiff then dismissed the action as to the defendant Phil Marquez only. From this judgment of nonsuit the plaintiff appeals.

The issue upon which appellant bases this appeal can be clearly defined. Appellant claims that a perusal of the record shows evidence to the effect that the defendant Marquez was acting in the scope of his employment at the time of the accident and that the granting of a judgment of nonsuit upon the ground that the evidence established that Marquez was not acting in the scope of his employment constituted reversible error.

The evidence bearing upon whether defendant Marquez was acting in the scope of his employment at the time of the accident may be found in the testimony of Marquez, called by plaintiff and appellant under section 2055 of the Code of Civil Procedure. A summary of the pertinent portions of this testimony is related in the facts above disclosed.

On this particular evening, it became necessary for Marquez to use a micrometer to test the roundness of the crank shaft and to use certain other tools which were not available to him in the shop. He proceeded to secure the tools at the home of his parents for the completion of the work that evening. On his return he deviated from the course as described for the purpose of having his dinner at his customary boarding house.

There seems to be but little doubt that had the accident happened between the location of the garage and the home of Marquez' parents, where the tools were secured, the relationship of master and servant would have existed. The evidence would likewise have supported a finding that Marquez was acting in the scope of his employment. Had the accident happened between his parents' home and the boarding house, a question might have arisen as to whether Marquez had departed from the business of the master and engaged in some matter solely for his own pleasure or convenience or pursued some object which related to an end or purpose which may be said to be the servant's individual and exclusive business. The question presented is this: At the time of the accident and after Marquez had finished his

dinner and was on his return trip to the garage with the tools, was there sufficient evidence, viewed in a light most favorable to appellant, to leave to the jury for determination the question whether, under the circumstances, the evidence established only a deviation, rather than a departure from the scope of employment on the part of the servant?

It is clear from the record that Marquez combined his own business with the master's business during this journey, but the evidence suggests that the controlling purpose of this journey was to serve the master, particularly so as to the intended trip from the boarding house to the shop.

Appellant contends that if any deviation took place, it was incidental to the main purpose of the journey, which was to serve the master; that there was only a slight deflection from the pursuit of the master's business; and that there was no purpose or intent on the part of Marquez to depart from the pursuit of the master's business and go on a trip to carry out a purpose purely and solely connected with his own business as distinguished from that of his employer, citing *Hiroshima* v. *Pacific Gas & Elec. Co.*, 18 Cal. App. (2d) 24, at p. 31 [63 Pac. (2d) 340]; *Kruse* v. *White Bros.*, 81 Cal. App. 86 [253 Pac. 178]; *Gayton* v. *Pacific Fruit Express Co.*, 127 Cal. App. 50 [15 Pac. (2d) 217]; *Adams* v. *Tuxedo Land Co.*, 92 Cal. App. 266, at 268 [267 Pac. 926]; *Martinelli* v. *Stabnau*, 11 Cal. App. (2d) 38, 40 [52 Pac. (2d) 956]; *Helm* v. *Bagley*, 113 Cal. App. 602, at 605 [298 Pac. 826]; *Brimberry* v. *Dudfield Lumber Co.*, 183 Cal. 454 [191 Pac. 894]; *Aubel* v. *Sosso*, 72 Cal. App. 57 [236 Pac. 319].

Appellant further advances the contention that this aspect of the question would have been a proper question of fact for the jury, and cites in support thereof *Waack* v. *Maxwell Hardware Co.*, 210 Cal. 636, at 641 [292 Pac. 966], *Dennis* v. *Miller Automobile Co.*, 73 Cal. App. 293, 297 [238 Pac. 739], *Ryan* v. *Farrell*, 208 Cal. 200, 204 [280 Pac. 945], *Tuttle* v. *Dodge*, 80 N. H. 304 [116 Atl. 627], and *Riley* v. *Standard Oil Co. of New York*, 231 N. Y. 301 [132 N. E. 97, 22 A. L. R. 1382].

Respondent contends with equal force that the servant was acting in his own behalf and not on behalf of his master and that therefore he was not within the scope of his employment

and the master was not liable; that when the employee in this case turned aside from the route back to the shop, he departed on an errand (to eat his dinner) which he claims has been clearly stated to be one personal to the employee and not within the scope of his employment.

It has been decided in California and is the general rule elsewhere, that an employee *on his way to lunch,* even though he is driving an automobile which is the property of the master, is not engaged in furthering any end of the employer, and that therefore under such circumstances the servant is not acting within the scope of his employment. (*Carnes* v. *Pacific Gas & Elec. Co.,* 21 Cal. App. (2d) 568, 571 [69 Pac. (2d) 998, 70 Pac. (2d) 717]; *Kish* v. *California S. Automobile Assn.,* 190 Cal. 246 [212 Pac. 27]; *Adams* v. *Tuxedo Land Co., supra; Helm* v. *Bagley, supra.*)

In order to escape the force of this reasoning, appellant urges that Marquez still had these tools in the car; that he ultimately would have arrived back at the garage with them, and that therefore his controlling purpose at all times during this trip was to carry out the master's business, and at no time was he engaged solely upon his own separate business.

In support of the judgment of nonsuit, respondent relies principally upon the case of *Gordoy* v. *Flaherty, 9* Cal. (2d) 716 [72 Pac. (2d) 538]. In that case Flaherty was employed by the Union Oil Company as a service station attendant in San Jose. As a part of his duties, he was occasionally required to go into town and get change and also to turn money into the branch office of the company. There was no route prescribed for these errands. Just before noon on the day of the accident Flaherty took his own automobile, drove to the bank to get change, intending thereafter to proceed to the branch office of the company to leave the money. While he was stopping at the bank, Mrs. Franz, mother of a friend and fellow employee, asked him to take her to her home in Santa Clara, a few miles away from San Jose. He agreed, and after assisting her into the car with her parcels, he proceeded to drive toward the company office. Instead of stopping there, he proceeded on toward her home and the collision occurred three blocks past the office. The jury's verdict for plaintiff against the Union Oil Company was reversed on appeal. In reversing the judgment the court said:

"It seems perfectly clear that at the time of the accident Flaherty had departed from his employment and was performing services for another, outside its scope. This is not a case of a choice of different possible routes, or minor or immaterial deviations in the course of a business errand. If Flaherty had taken Mrs. Franz as a passenger, and driven her to some point between the bank and the branch office, or had even deviated by a short distance from the most direct route, it might still be held that he was within the general scope of his employment at the time of the accident. . . . But it was not a mere deviation *when he actually passed the company office and proceeded in the direction of a place which had no relation to the company business.* (Italics ours.) This was a real departure from the employment, despite the fact that he intended subsequently to return to his employer's business; and during such departure the employer was not liable for the employee's tort."

■ The Supreme Court has thus determined that, as a matter of law, where the servant was proceeding in a direction and on a trip diametrically opposed to that dictated by his master's business, he was not within the scope of his employment, even though the trip started, and would have terminated, in a delivery of the master's property to the master's offices. The Flaherty case cited *Sauriolle* v. *O'Gorman,* 86 N. H. 39 [163 Atl. 717], to the same effect. In support of the general rule claimed, respondent cites *Humphrey* v. *Safeway Stores,* 4 Cal. App. (2d) 589 [41 Pac. (2d) 208].

Respondent further argues that the servant was upon his own trip until his return to the point of departure or to a point where, in the performance of his duty, he ought to be, citing *Gousse* v. *Lowe,* 41 Cal. App. 715 [183 Pac. 295], *Hiroshima* v. *Pacific Gas & Elec. Co., supra; Peccolo* v. *City of Los Angeles,* 8 Cal. (2d) 532 [66 Pac. (2d) 651], and *Hanchett* v. *Wiseley,* 107 Cal. App. 230, 233 [290 Pac. 311]. Respondent maintains that upon the facts established, only a question of law was presented and it was therefore the duty of the trial judge to remove the question from the consideration of the jury and grant a nonsuit, citing *Brown* v. *Chevrolet Motor Co.,* 39 Cal. App. 738 [179 Pac. 697], *Wagnitz* v. *Scharetg,* 89 Cal. App. 511 [265 Pac. 318], *Gousse* v. *Lowe, supra,* and *Kruse* v. *White Bros., supra.*

Appellant in her brief submits that a perusal of the above testimony establishes the proposition that had Marquez not gone over to get dinner but had been involved in this accident during a trip back to the Weedall shop with the micrometer and other tools, there would be no question that he was acting in the scope of his employment. On the other hand, if Marquez had gone directly to dinner upon leaving the Weedall shop and at the time of the accident was not carrying the micrometer and tools but was only returning to the shop to resume his work, it is clear that he would not have been acting within the scope of his employment. It is the contention of appellant that the principal case cannot be brought under those authorities that hold that a servant is not acting within the scope of his employment while going to or returning from meals.

An examination of authorities that break the scope of the employment while the employee is going to or returning from a meal will reveal a limitation on the rule. In the leading case of *Adams* v. *Tuxedo Land Co., supra,* there is this language:

"He was not going to the pumping plant on any mission for the company, nor was he transporting any property belonging to the company, but was going there to eat his own lunch, . . . "

The above language was quoted and emphasized in italics in *Carnes* v. *Pacific Gas & Elec. Co., supra.*

In *Martinelli* v. *Stabnau, supra,* the court said:

"The case presents the sole question whether the employee, while on his way home to lunch, was acting in the service of his employer and not solely in his own behalf, while he was doing no act or thing which pertained to the business of his employer."

There would appear to be implied in the above cases the limitation that going to and coming from meals breaks the scope of agency only when the sole purpose of the servant is to obtain the meal and he is doing nothing at the time which pertains to the business of the master. It would seem that the cases should be interpreted as establishing the above as a definite rule of law to be applied only to a specific situation. If, at the time of his trip, the servant combines some purpose of serving the master with the trip to obtain food,

it would be an invasion of the province of the jury to hold as a matter of law that the scope of his employment is broken.

The court in *Helm* v. *Bagley, supra,* p. 603, gave cognizance to a limitation of the rule as above suggested by its treatment of the point that some of the employer's property was in the car. It was there said:

"At this time he had in his car some vacuum cleaner attachments which belonged to his employer. He did not know how long they had been in the car and was not taking them to any particular place as it was his habit to carry samples of the merchandise handled by his employer."

The distinction made by the court as to the property in the car suggests forcibly that had the property been carried to fulfill some immediate purpose connected with the employment, it would have been a material factor in establishing the cause of action as to the scope of the servant's employment. The analysis of the evidence must be made under the ordinary rules as to what constitutes a departure from the scope of employment. Those rules are not to be applied mechanically but look rather to the purpose of the servant while acting. A deviation from the strict course of duty does not necessarily take him out of the scope of employment if meanwhile his main purpose is still to carry on the business of his master.

It was aptly stated in *Kruse* v. *White Bros., supra:*

"To exonerate the master, however, it is essential that the deviation be for purposes entirely personal to the servant . . . and a deviation will be regarded as immaterial if the latter combines his own business with that of the master or attends to both at substantially the same time (*Brimberry* v. *Dudfield Lumber Co.*, 183 Cal. 454 [191 Pac. 894]). A mere deviation from the strict course of his duty does not release the master from liability. In order to have that effect it must be so substantial as to amount to an entire departure. . . . As the rule has been stated, 'One does not cease to be acting within the course of the master's employment because his most direct and immediate pursuit of the master's business is subject to necessary, usual or incidental personal acts, nor even by slight and immaterial delays or deflections from the most direct route for a personal or private purpose, the pursuit of the master's business continu-

ing to be the controlling purpose. Such acts, not amounting to a turning aside completely from the master's business so as to be inconsistent with its pursuit, are often only what might be reasonably expected, to which, therefore, the master's assent may be fairly assumed; or they are in many instances the mingling with the pursuit of the master's business some purpose of the servant's own.' . . .

"Whether there has been a deviation so material or substantial as to constitute a complete departure is usually a question of fact."

In the above case the employee was held to be acting in the scope of his employment when his purpose was to call upon a customer of his employer, although in proceeding to the home of the customer the employee detoured in order to pick up and take home a lady friend, and at the time of the accident had driven at least 1600 feet beyond the point where he could have turned to reach the home of the customer.

It was held in *Dennis* v. *Miller Automobile Co., supra,* that it was proper to leave to the jury the determination of the fact whether the employee was acting in the scope of his employment at the time of the accident. In that case it was found to be merely a deviation when the employee, who was taking packages to the express office for his employer in a delivery truck, departed from his usual route in order to take two fellow-employees to lunch. The court said: .

"It is evident that the driver of the appellant's automobile had not abandoned his purpose of taking the packages to the express office, but was simply accomplishing a double purpose, he was taking both the two packages and the two boys. There would be no return to the point of departure. . . ."

In that case the court distinguishes *Gousse* v. *Lowe, supra,* and *Kish* v. *California State Automobile Assn., supra.*

The case of *Gordoy* v. *Flaherty, supra,* on which respondent relies so strenuously, may be distinguished from the principal case on the fundamental principle that it dealt with an abandonment of employment rather than with acts which constituted a mere deviation from the scope of employment. Here the factual distinction is to be noted that in the Gordoy case the servant had passed his destination and

was proceeding directly away from it, whereas, in the principal case the servant was proceeding generally toward his master's shop to finish his task for his employer. That this factual distinction gives rise to a legal distinction is strongly suggested in *Wuack* v. *Maxwell Hardware Co., supra.*

In that case a truck driver was authorized to take the company truck from his home to a garage to secure a recharged battery. Instead of going to the garage he assisted his brother-in-law in moving a cabinet from a clubhouse, a distance of 2.5 miles from his home, to his brother-in-law's home. It was a distance of 4.1 miles from the clubhouse to the garage and 1.1 miles from the garage to the brother-in-law's home. En route they passed the garage. The defendant driver then started in the truck to the garage with the intention of leaving it there for repair. The brother-in-law followed in his car to assist the driver in returning home. When the truck was an even mile from the house of the brother-in-law and .1 mile from the garage the accident occurred. In passing on the same question here involved, and after reviewing many of the cases cited by the respondent, our Supreme Court held that where a truck driver employed by a company deviated from his route to a garage to which he was going to have repairs made to the truck, in order to do an errand for a relative which took him nearly five miles out of his course, and after performing said errand and while he was on his way to the garage met with an accident, *the question of whether the driver was acting in the scope of his employment at the time of the accident was one of fact for the jury to determine under proper instructions from the court.* The court then said:

"The question seems to be reduced then to this proposition: In this case when did a question of fact arise as to the time and place when the servant reentered the service of the master? If the servant had gone first to the brother-in-law's residence for the purpose of having the brother-in-law assist him in reaching home after depositing the truck at the garage, would not a question of fact arise as to whether he had abandoned his master's service, and would not this be true even though in so doing he passed en route the garage? If so, does not a similar question arise as to whether or not, on reaching his brother-in-law's home, he there resumed

his master's business? . . . If, therefore, the servant might have passed the place of the accident while en route from his home to the garage, even though in so doing he might have deviated slightly from the most direct route, would not a question of fact have arisen as to whether or not he had abandoned his master's service? If this be so, does not an issue of fact arise as to whether or not at this point again the servant reentered the employment of his master?''

In *Ryan* v. *Farrell, supra,* this rule was established: ''that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible unless it clearly appears that the servant could not have been directly or indirectly serving his master. (Citing cases.)''

■ Upon a judgment of nonsuit, the presumptions upon appeal are not strong for the correctness of the trial court's ruling; but the evidence must be construed as strongly as possible the other way, since the plaintiff is entitled to a judgment upon the merits if there is any substantial evidence in his favor. (*Vermont Marble Co.* v. *Declez etc. Co.,* 135 Cal. 579 [67 Pac. 1057, 87 Am. St. Rep. 143, 56 L. R. A. 728].)

It seems to be firmly established that a master is liable for the result of a servant's negligence when the servant is acting in the course of his employment. It is not the rule itself but its application that ever causes a doubt. The servant may be acting for himself. He may be engaged in an independent errand of his own. He may abandon his master's service permanently or temporarily. While still doing his master's work, he may be also serving a purpose of his own. He may be performing his master's work but in a forbidden manner. No formula may be stated that will enable us to solve the problem whether at a particular moment a particular servant is engaged in his master's business. We recognize that the precise facts before the court will vary the result. We realize that differences of degree may produce unlike effects. But whatever the facts, the answer depends upon a consideration of what the servant was doing and why, when, where and how he was doing it. He may be

so distant from the proper scene of his labor, or he may have left his work for such a length of time, as to evidence a relinquishment of his employment. Or the circumstances may have a more doubtful meaning. That the servant is where he would not be had he obeyed his master's orders in itself is immaterial, except as it may tend to show a permanent or a temporary abandonment of his master's service. Should there be such a temporary abandonment the master again becomes liable for the servant's acts when the latter once more begins to act in his business. Such a reentry is not affected merely by the mental attitude of the servant. There must be that attitude coupled with a reasonable connection in time and space with the work in which he should be engaged. No hard-and-fast rule on the subject either of space or time can be applied. He may choose a different way back.

We are not called upon to decide whether the respondent might not have been responsible had this accident occurred while Marquez was on his way from his parents' home to his boarding house. That would depend on whether this trip was to be regarded as a new and independent journey on his own business, distinct from that of his master or as a mere deviation from the general route from the parents' home to the garage. Whether the detour made by the driver in the instant case and at the time of the accident under the circumstances amounted to an abandonment of the employment was, in view of the evidence, a question for the jury.

The accident did not happen on the journey from the parents' home to the boarding house where Marquez had his evening meal. It did happen after that meal had been consumed and when the servant was on the return journey to his place of employment. Even though it might be held that he had departed from his employment in going to his meal, it would not follow that he had not returned to the service of his employer when he resumed his journey to the garage with tools necessary for his work. From the evidence before us, the above-mentioned questions cannot be determined as a matter of law. We are of the opinion, in the light of the decisions and reasoning expressed that these questions should have been presented to the jury under proper instructions.

The judgment of nonsuit is reversed.

Barnard, P. J., and Marks, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 8, 1939.