Filed 10/1/13

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| HALLIBURTON ENERGY SERVICES, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br> DEPARTMENT OF TRANSPORTATION, <br><br> Defendant and Appellant. | F064888 <br><br> (Super. Ct. Nos. CV271420, CV271425, CV271803, CV271925 & CV273115) <br><br> **OPINION** |
| CARLY BAKER, <br><br> Plaintiff and Appellant, <br><br> v. <br> HALLIBURTON ENERGY SERVICES, INC., <br><br> Defendant and Respondent. | F064935 |
| MICHAEL BUXBAUM, <br><br> Plaintiff and Appellant, <br><br> v. <br> HALLIBURTON ENERGY SERVICES, INC., <br><br> Defendant and Respondent. | F064950 |

APPEAL from a judgment of the Superior Court of Kern County.  William D. Palmer, Judge.

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Girardi Keese, Thomas V. Girardi and Shawn J. McCann for Plaintiff and Appellant Carly Baker.

Thorsnes Bartolotta McGuire, Vincent J. Bartolotta, Brett J. Schreiber, Benjamin Siminou; Higgs, Fletcher & Mack, John Morris and Victoria E. Fuller for Plaintiff and Appellant Michael Buxbaum.

Ronald W. Beals, Jeanne Scherer, Douglas L. Johnson, Lauren A. Machado, Bruce D. McGagin and Peter Ackeret for Defendant and Appellant.

Wanger Jones Helsley, Timothy Jones, Michael S. Helsley and Patrick D. Toole for Plaintiff and Respondent and for Defendant and Respondent.

-ooOoo-

Plaintiffs appeal from summary judgments granted in favor of defendant, Halliburton Energy Services, Inc. (Halliburton), in these consolidated actions. We conclude the trial court properly granted summary judgment on the ground the undisputed facts demonstrated Halliburton cannot be held vicariously liable for the tortious conduct of its employee. The employee was not acting within the scope of his employment at the time of the accident; as a result, the requirements for imposing respondeat superior liability cannot be established. Accordingly, we affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Troy Martinez was employed by Halliburton as a directional driller from November 2006 to May 2011. In December 2006, Martinez was assigned a company pickup truck to drive. He had the option of using his personal vehicle or being assigned a company truck and chose the latter. At the time the truck was assigned, his supervisor, Steve Mulholland, told Martinez he could use the company vehicle to get to work and back and to run personal errands en route; Martinez stated Mulholland told him he could run errands and take care of business as long as he was back in time for his next shift. Halliburton had a written policy, which Martinez reviewed prior to June 24, 2009, which stated that company vehicles were not to be used for personal business, but could be used

2

to commute between home and work, "and may make a stop directly en route for personal reasons while traveling to and from work."

In September 2009, Martinez lived in Caliente, about 45 to 50 miles from Bakersfield. He worked about 50 percent of the time in Bakersfield and 50 percent of the time at other locations around California. In early September 2009, Martinez was assigned to work on an oil rig in the ocean near Seal Beach; the job was expected to take two to three weeks. Martinez worked a shift that began at 9:00 p.m. on September 12, 2009, and ended at 9:00 a.m. on September 13, 2009. After his shift on the oil rig ended that morning, he returned to shore, got in the company pickup, and traveled approximately 140 miles to Bakersfield, where he met his wife and daughter at a car dealership to purchase a vehicle for his wife. The deal fell through and Martinez and his family went to a restaurant and had lunch. Martinez then began the return trip to Seal Beach. He intended to drive back to his hotel room in Seal Beach, pick up clean coveralls, stop at Taco Bell and pick up dinner and food for later (because food was not provided on the oil rig), and eat while he waited for the boat back to the oil rig for his 9:00 p.m. shift. Approximately 20 miles south of Bakersfield, as he began his ascent up the Grapevine (Interstate Highway 5 (I-5) southbound), he was involved in an accident. Martinez testified in deposition that he was traveling in the number one lane in heavy traffic when he saw pebbles or gravel in the road; the truck began to fishtail, then it was in the air. The pickup struck a vehicle in the northbound lanes of I-5, injuring the six plaintiffs.

The six injured plaintiffs sued Halliburton, Martinez, and the State of California Department of Transportation (Caltrans) in three separate actions.[1] They alleged Martinez's pickup went off the pavement, or lost traction on gravel and went off the

---

[1]      Buxbaum did not sue Martinez.

3

pavement, traveled up a mound of dirt in the center divider, and was launched into the air, landing on the northbound lanes of the freeway, where it collided with plaintiffs' vehicle. Plaintiffs alleged causes of action for negligence against Martinez and against Halliburton as his employer; they alleged Caltrans was responsible for a dangerous condition of public property that contributed to the accident. Halliburton and Martinez filed separate actions against Caltrans for indemnity and contribution. The cases were all consolidated. Halliburton moved for summary judgment on the complaints filed by the six injured plaintiffs, arguing that it was sued on theories of respondeat superior, negligent supervision, and negligent entrustment, but it could not be held liable on those theories because Martinez was not acting within the course and scope of his employment at the time of the accident. The injured plaintiffs and Caltrans opposed the motions. The trial court granted the motions and entered judgment in Halliburton's favor in the three actions. Plaintiffs, Carly Baker and Michael Buxbaum, and defendant, Caltrans, appeal.

## DISCUSSION

### I.    Standard of Review

A grant of summary judgment is reviewed de novo. Summary judgment is properly granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In moving for summary judgment, a "defendant … has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action … cannot be established, or that there is a complete defense to that cause of action." (§ 437c, subd. (p)(2).) Once the moving defendant has met its initial burden, "the burden shifts to the plaintiff … to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (§ 437c, subd. (p)(2).)

4

"As a summary judgment motion raises only questions of law regarding the construction and effect of supporting and opposing papers, this court independently applies the same three-step analysis required of the trial court. We identify issues framed by the pleadings; determine whether the moving party's showing established facts that negate the opponent's claim and justify a judgment in the moving party's favor; and if it does, we finally determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]" (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342.) "There is a triable issue of fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted (*Aguilar*).) "The evidence of the party opposing the motion must be liberally construed, and that of the moving party strictly construed." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 308.)

## II. Respondeat Superior

### A. General rule

Halliburton's motion for summary judgment was based primarily on its contention that the evidence would not support a finding that Martinez was acting within the scope of his employment with Halliburton at the time of the accident, and therefore Halliburton could not be held liable to plaintiffs on a theory of respondeat superior. "Under the doctrine of respondeat superior, an employer is liable for the torts of his employees committed within the scope of their employment [citations]. The burden of proof is on the plaintiff to demonstrate that the negligent act was committed within the scope of employment. [Citations.]" (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 721-722.) "Where the facts of the case make it arguable whether the employee has acted within the scope of his employment, then the scope of employment issue is one properly decided by the trier of fact. However, where the facts would not support an inference that the

5

employee acted within the scope of his employment and where there is no dispute over the relevant facts, the question becomes one of law." (*Alma W. v. Oakland Unified School Dist*. (1981) 123 Cal.App.3d 133, 138 (*Alma W.*).)

"'[T]he modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.' [Citation.]" (*Hinman v. Westinghouse Electric Co.* (1970) 2 Cal.3d 956, 959-960 (*Hinman*).) "The employer is liable not because the employer has control over the employee or is in some way at fault, but because the employer's enterprise creates inevitable risks as a part of doing business. [Citations.]" (*Bailey v. Filco, Inc*. (1996) 48 Cal.App.4th 1552, 1559 (*Bailey*).) Under respondeat superior, an employer is liable for the "'risks that may fairly be regarded as typical of or broadly incidental to the enterprise [the employer] has undertaken,'" that is, "the risks inherent in or created by the enterprise." (*Hinman, supra,* at p. 960.)

Some courts employ a two-prong test to determine whether an employee's conduct was within the scope of his employment for purposes of respondeat superior liability, asking whether "'1) the act performed was either required or "incident to his duties" [citation], or 2) the employee's misconduct could be reasonably foreseen by the employer in any event [citation].' [Citation.]" (*Alma W., supra*, 123 Cal.App.3d at p. 139.) If the employee's actions fall within either prong, the employer is liable for the injury. (*Ibid*.)

6

"""[F]oreseeability" in this context must be distinguished from "foreseeability" as a test for negligence. In the latter sense "foreseeable" means a level of probability which would lead a prudent person to take effective precautions whereas "foreseeability" as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among the other costs of the employer's business. [Citations.]'" (*Bailey, supra*, 48 Cal.App.4th at p. 1559.) Thus, for respondeat superior liability to attach there must be "a nexus between the employee's tort and the employment to ensure that liability is properly placed upon the employer." (*Id.* at p. 1560.)

The most common, obvious cases in which respondeat superior liability arises are those "in which the employee commits a tortious act while performing his or her ordinary duties for the employer at the employer's place of business. In such circumstances, the employer is ordinarily liable for the employee's tortious act, even if wholly unauthorized and without benefit to the employer." (*Childers v. Shasta Livestock Auction Yard, Inc.* (1987) 190 Cal.App.3d 792, 801-802.) An exception is made when the employee has substantially deviated from his duties for personal purposes at the time of the tortious act. (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968; *Bailey, supra*, 48 Cal.App.4th at p. 1564.) While a minor deviation is foreseeable and will not excuse the employer from liability, a deviation from the employee's duties that is "so material or substantial as to amount to an entire departure" from those duties will take the employee's conduct out of the scope of employment. (*Bailey,* at p. 1564.) For example, when the employee leaves the employer's premises on a lunch break, to get lunch or run a personal errand, and the employee is not engaged in any errand or task for the employer, the employee is not acting within the scope of his or her employment. (*Id.* at p. 1566; *Cain v. Marquez* (1939) 31 Cal.App.2d 430, 435 (*Cain*).)

7

The undisputed evidence indicated Martinez was not performing his ordinary duties for Halliburton at its place of business or at his assigned worksite at the time of the accident. The accident occurred when he was between shifts, approximately 120 miles away from his assigned worksite. Plaintiffs do not contend the basic rule of respondeat superior—imposing liability on the employer for torts committed by the employee while the employee is performing his or her ordinary duties for the employer at the employer's place of business—applies in this case. Rather, they contend respondeat superior liability should be imposed because the facts fall within an exception to the going and coming rule.

### B.    *"Going and coming" rule and incidental benefit exception*

"Under the 'going and coming' rule, an employee going to and from work is ordinarily considered outside the scope of employment so that the employer is not liable for his torts. [Citation.] The 'going and coming' rule is sometimes ascribed to the theory that the employment relationship is 'suspended' from the time the employee leaves until he returns [citation], or that in commuting he is not rendering service to his employer [citation]. Nevertheless, there are exceptions to the rule." (*Hinman, supra,* 2 Cal.3d at p. 961.) One exception to the going and coming rule has been recognized when the commute involves "'an incidental benefit to the employer, not common to commute trips by ordinary members of the work force.' [Citation.]" (*Jeewarat v. Warner Bros. Entertainment, Inc.* (2009) 177 Cal.App.4th 427, 435-436.) When the employer incidentally benefits from the employee's commute, that commute may become part of the employee's workday for the purposes of respondeat superior liability. Plaintiffs contend the incidental benefit exception applies in this case.

The incidental benefit exception has been applied when the employer furnishes, or requires the employee to furnish, a vehicle for transportation on the job, and the negligence occurs while the employee is traveling to or from work in that vehicle.

8

(*Henderson v. Adia Services* (1986) 182 Cal.App.3d 1069, 1073-1074; *Huntsinger v. Glass Containers Corp*. (1972) 22 Cal.App.3d 803, 810 (*Huntsinger*); *Lobo v. Tamco* (2010) 182 Cal.App.4th 297, 301 (*Lobo*) [referring to this as the "required-vehicle exception"].)  The theory is that the employer benefits from the employee driving the vehicle to and from work because the vehicle is then available for use in the employer's business during the working day.  It is also available to the employee during off-duty hours, in case it is needed for emergency business trips or to make business stops on the way to or from the work place.  (*Huntsinger, supra*, at p. 810; *Lobo, supra*, at pp. 302-303.)  "[W]hen a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business during the day, accidents on the way to or from the office are statistically certain to occur eventually, and, the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise." (*Huntsinger,* at p. 810.)

In opposing Halliburton's motion for summary judgment, plaintiffs attempted to show that Halliburton benefited from Martinez's use of the company truck for his commute to and from work, in order to invoke the incidental benefit exception to the going and coming rule and create a triable issue of fact regarding whether Martinez was acting within the scope of his employment at the time of the accident.  We need not decide whether the evidence presented would be sufficient to support a jury finding of an incidental benefit to Halliburton, so that Martinez's commute in the company truck would be considered to be within the scope of his employment.  Even if the incidental benefit exception applies, Halliburton presented undisputed facts establishing that Martinez was engaged in purely personal business at the time of the accident, and was not acting within the scope of his employment for purposes of respondeat superior liability.  Plaintiffs failed to present evidence raising a triable issue of material fact on that issue.

9

Where the incidental benefit exception applies, the employee's commute directly between work and home is considered to be within the scope of employment for respondeat superior purposes. Minor deviations from a direct commute are also included, but there is no respondeat superior liability if the employee substantially departs from the employer's business or is engaged in a purely personal activity at the time of the tortious injury.

In *Hinman*, the defendant's employee was returning home from work at a job site when his vehicle struck a police officer standing in the center divider of a freeway. The court concluded the incidental benefit exception to the going and coming rule applied, because the employee was paid for his travel time and travel expenses, which benefited the employer because it could "reach out to a labor market in another area or to enlarge the available labor market by providing travel expenses and payment for travel time." (*Hinman, supra*, 2 Cal.3d at pp. 959, 962.) The court stated: "We are satisfied that, where, as here, the employer and employee have made the travel time part of the working day by their contract, the employer should be treated as such during the travel time, and it follows that *so long as the employee is using the time for the designated purpose, to return home*, the doctrine of *respondeat superior* is applicable. It is unnecessary to determine the appropriate rule to be applied if the employee had used the time for other purposes." (*Id*. at p. 962, first italics added.) The material facts were undisputed and the court held the doctrine of respondeat superior applied as a matter of law. (*Id*. at p. 963.)

In *Huntsinger*, the plaintiffs' decedent was killed when his motorcycle collided with a pickup truck owned and driven by the defendant's employee, who used it extensively in carrying out the duties of his employment. (*Huntsinger, supra*, 22 Cal.App.3d at p. 806.) At the time of the accident, the employee was driving directly from the employer's office to the employee's home. (*Id*. at pp. 806-807.) The court concluded the incidental benefit exception to the going and coming rule applied.

Consequently, because the employee may have been acting within the scope of his employment when driving home from the office, the trial court should not have granted nonsuit in favor of the employer. (*Id*. at p. 810.) The court added: "We do not deal, of course, with a case in which the employee was not directly driving home but was engaged on some errand of his own." (*Ibid*.)

In *Lazar v. Thermal Equipment Corp*. (1983) 148 Cal.App.3d 458 (*Lazar*), the court addressed the issue *Hinman* and *Huntsinger* expressly did not decide: the effect of a deviation from the direct route home. The employee was furnished with a company truck, which he used in responding to customer calls. On the day of the accident, he finished work and left the employer's business premises in the company truck. Instead of heading directly home, however, he proceeded in the opposite direction, intending to stop at a store to make a purchase, and then go home. (*Lazar, supra,* at p. 461.) On the way to the store, he was involved in an accident. The court concluded the incidental benefit exception to the going and coming rule applied. (*Id.* at p. 463.) The court reiterated the policy reason behind the respondeat superior doctrine: to place liability for losses caused by the torts of employees on the employer whose enterprise generated them and could absorb them and distribute them throughout the community through prices or insurance. (*Id*. at p. 464.) It added that "[c]ategorization of an employee's action as within or outside the scope of employment thus begins with a question of foreseeability, i.e., whether the accident is part of the inevitable toll of a lawful enterprise." (*Ibid*.)

> "'One way to determine whether the risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, "foreseeability" in this context must be distinguished from "foreseeability" as a test for negligence. In the latter sense "foreseeable" means a level of probability which would lead a prudent person to take effective precautions whereas "foreseeability" as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling

that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' [Citation.]

"One traditional means of defining this foreseeability is seen in the distinction between minor 'deviations' and substantial 'departures' from the employer's business. The former are deemed foreseeable and remain within the scope of employment; the latter are unforeseeable and take the employee outside the scope of his employment." (*Lazar, supra*, 148 Cal.App.3d at pp. 464-465.)

Generally, "[i]f the main purpose of [the employee's] activity is still the employer's business, it does not cease to be within the scope of the employment by reason of incidental personal acts, slight delays, or deflections from the most direct route." (*Lazar, supra*, 148 Cal.App.3d at p. 465.) "'[A]cts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself and not acts of service, do not take him outside the scope of his employment.' [Citation.]" (*Ibid*.)

The undisputed evidence indicated the employee intended to make a brief stop for a minor errand "broadly speaking, on the way home." (*Lazar, supra*, 148 Cal.App.3d at pp. 465-466.) The court concluded this was a minor deviation from the employer's business, which was necessary to the employee's comfort and convenience. It was also foreseeable. "While a decision to stop at a party, or a bar, or to begin a vacation, might not have been foreseeable, we can think of no conduct more predictable than an employee's stopping at a store to purchase a few items on the way home." (*Id*. at p. 466.) The risk of an accident during such a minor and foreseeable deviation was part of the inevitable toll of a lawful enterprise. (*Ibid*.) The court concluded, as a matter of law, the doctrine of respondeat superior applied. (*Id*. at p. 467.)[2]

---

[2] The recent case of *Moradi v. Marsh USA, Inc*. (Sept. 17, 2013, B239858) __Cal.App.4th__ [2013 Cal.App.4th Lexis 736], which was cited during oral argument, followed *Lazar* in a situation involving a minimal deviation from the employee's commute home. An employee, who was required to and did regularly use her vehicle for business purposes before, during and after work-hours, left the office in her vehicle, planning to stop on

12

When the tortious act occurs while the employee is engaged in purely personal pursuits, the employee is not acting within the scope of his or her employment and the employer does not incur respondeat superior liability. (*Sunderland v. Lockheed Martin Aeronautical Systems Support Co.* (2005) 130 Cal.App.4th 1, 11 (*Sunderland*).) This rule applies when the employee substantially departs from his or her commute or when the entire trip is a substantial departure from his or her job duties.

In *Le Elder v. Rice* (1994) 21 Cal.App.4th 1604 (*Le Elder*), the employee was driving his own vehicle when he struck the plaintiff as she crossed the street on her bicycle. The employee used the vehicle in his employment and was reimbursed for maintenance costs and mileage. (*Id*. at p. 1606.) At the time of the accident the employee had driven his children from home to school, and he was returning home; he intended to make a business call from his home later in the morning. (*Ibid*.) The court rejected the plaintiff's argument that the employer was automatically liable on a respondeat superior theory because it required the employee to be on call 24 hours a day, seven days a week. (*Id*. at p. 1607.) Rather, the court applied the general rule that an employee's scope of employment is determined by ascertaining whether the risk involved was typical of or broadly incidental to the enterprise undertaken by the employer. (*Ibid*.)

The court concluded the employee's trip to the children's school was such a substantial personal deviation from his employment duties that it would be unfair to hold the employer vicariously liable for the accident. (*Le Elder, supra*, 21 Cal.App.4th at

_____

the way home to buy some frozen yogurt, then attend a yoga class before going home. On her way, as she made a left turn from her route home into the parking lot of the yogurt shop, her vehicle collided with the plaintiff's motorcycle, injuring him. The court applied the required-vehicle exception to the going and coming rule, found the employee's deviation from her route home was minor and foreseeable, concluded she was acting within the scope of her employment at the time of the accident, and reversed the summary judgment in favor of her employer. (*Moradi, supra,* at pp. *41, 53-54.)

p. 1608.)  The plaintiff argued driving the vehicle was a typical part of the employer's enterprise, essential to the employee's duties, and it was the employee's custom to be on the road at that time of the day; the possibility of accidents was therefore foreseeable to the employer.  She also argued that the return trip was not part of a personal errand, because the errand had been completed and the employee was on his way home, a location from which a business call was to be made.  (*Ibid*.)  The court dismissed these considerations as irrelevant.  (*Ibid*.)  It also rejected a proposed totality of the circumstances analysis, which would have based liability on the employee's on-call status, the use of a pager, the annual mileage requirement, and the reimbursement for travel and maintenance expenses.

At the time of the accident, the employee was engaged in the purely personal activity of driving his children to school.  He planned to eat breakfast and read the newspaper when he returned home, then make his business call an hour and fifteen minutes later.  The court concluded "[t]he entire trip was a substantial deviation from his employment duties."  (*Le Elder, supra*, 21 Cal.App.4th at p. 1608.)  As a matter of law, the employee was not within the scope of employment at the time of the accident, and the employer was not vicariously liable for the injury.  (*Id*. at p. 1610.)

In *Sunderland*, the employer, headquartered in Georgia, assigned the employee to work at Edwards Air Force Base in California for several months; the employee drove his vehicle from Georgia to California, moved into an apartment, and worked on the base.  (*Sunderland, supra*, 130 Cal.App.4th at pp. 7-8.)  On the employee's last workday at Edwards, he cleared out his office, packed his belongings at his apartment, visited his father-in-law to say good-bye, and then drove to a fast food restaurant to buy dinner.  In the drive-through lane, his vehicle rear-ended the plaintiff's.  The next day, the employee drove back to Georgia.  (*Id*. at p. 8.)

14

The court rejected the plaintiff's argument that the "commercial traveler rule," applicable in workers' compensation cases, should apply in determining whether the employee is acting within the scope of employment for respondeat superior purposes. (*Sunderland, supra*, 130 Cal.App.4th at p. 8.)  Under that rule, "'a commercial traveler is regarded as acting within the course of his employment during the entire period of his travel upon his employer's business,'" including while he is procuring food and shelter. (*Id*. at p. 10.)  The court instead applied the rule that the employer is vicariously liable only if the employee committed the tortious act within the scope of his employment, and the act is within the scope of employment when "'the risk of such an act is typical of or broadly incidental to the employer's enterprise'" or "'inherent in, typical of or created by the work so that it is a foreseeable risk of the particular employment.'" (*Id.* at p. 9.)  The court explained:  "If an employee's act is purely personal, it is not 'typical of or broadly incidental to the employer's enterprise.'  [Citation.]  If the main purpose of the injury-producing activity 'was the pursuit of the employee's personal ends, the employer is not liable.'  [Citations.]" (*Id*. at p. 11.)  The court concluded the employee's trip to the fast food restaurant was personal and not related to his employment or his employer.  The plaintiff's assertion that the employee was paid a per diem for housing and transportation expenses, which covered the cost of transportation to the fast food restaurant, did not change the outcome; the employee had performed no services for the employer for several hours before the trip to the fast food restaurant, and that trip was for his own benefit. (*Ibid*.)  The purpose of the employee's trip to buy fast food "was a purely private and personal activity, 'a substantial personal deviation from his employment duties' sufficient to make it unfair to hold [the employer] vicariously liable.  [Citation.]" (*Id*. at p. 12.)  This activity did not create a risk typical of or broadly incidental to his employment.  Consequently, the employee was not acting within the scope of his employment.  The court affirmed summary judgment in favor of the employer.  (*Ibid*.)

15

Courts have applied the same rule—distinguishing between activities that are typical of or broadly incidental to the employer's enterprise and activities that are purely personal to the employee—in determining whether activities of the employee during the workday are within the scope of employment. For example, the general rule is that, when an employee is traveling to or from lunch, even in the employer's vehicle, and performing no services for the employer, he is not acting within the scope of his employment. (*Peccolo v. City of Los Angeles* (1937) 8 Cal.2d 532, 539; *Gipson v. Davis Realty Co*. (1963) 215 Cal.App.2d 190, 209-210 (*Gipson*); see also, *Cain, supra,* 31 Cal.App.2d at pp. 435, 438.) As the *Gipson* court stated:

> "[T]he … employer is not liable for the acts of his … employee while the latter is pursuing his own ends, even though the injury complained of could not have been committed without the facilities afforded to the … employee by his relation to his … employer. [Citation.] Therefore, whether or not the … employer is responsible for the act of the … employee at the time of the injury depends upon whether the … employee was engaged at that time in the transaction of the business of his … employer, or whether he was engaged in an act which was done for his own personal convenience or accommodation and related to an end or purpose exclusively and individually his own." (*Gipson, supra*, 215 Cal.App.2d at p. 209.)

Thus, even if the employee was driving a company vehicle at the time the accident occurred, the employer is not liable if the driving "was done for his own personal convenience or accommodation and related to an end or purpose exclusively and individually his own." (*Gipson, supra*, 215 Cal.App.2d at p. 209.)

As these cases indicate, the incidental benefit exception to the going and coming rule may bring the employee's commute to and from work within the scope of the employee's employment, if the employee does not deviate substantially from a direct commute in order to carry out his own personal business. The exception does not apply, however, if the employee substantially departs from his or her employment duties during

16

the commute. It also does not apply if the employee's entire trip serves only his or her own personal purposes.

The undisputed facts presented by Halliburton's motion for summary judgment demonstrated that Martinez's purpose in traveling to and from Bakersfield on September 13, 2009, was entirely personal. He finished his shift and drove the company truck 140 miles to Bakersfield; he intended to meet his wife at a car dealership and sign the papers to purchase a vehicle for her. Martinez was not performing any services or running any errands for Halliburton. His supervisor was unaware of the trip until after the accident. The trip was not made in the furtherance of any business activity of the employer. The risk of a traffic accident during this personal trip was not a risk inherent in, or """"typical of or broadly incidental to,"""" Halliburton's enterprise. (*Bailey*, *supra*, 48 Cal.App.4th at pp. 1558-1559.)

Plaintiffs argue Martinez was returning to work at the time of the accident, so the trip, or at least the return from Bakersfield, was part of Martinez's commute back to work. We do not believe the purpose or destination of the return leg of the journey can be separated from the purpose of the trip as a whole in this manner. Under plaintiffs' theory, the return leg of any personal trip in the company vehicle, regardless of the length of time spent, the distance traveled, and the complete lack of connection between the trip and the enterprise of the employer or the work of the employee, would give rise to respondeat superior liability, as long as the employee's ultimate destination on return was the workplace. We reject such an expansion of the incidental benefit exception to the going and coming rule.

The purpose of Martinez's trip as a whole was entirely personal. The trip to Bakersfield was such a complete and material departure from his employment duties that it could not reasonably be considered to be an activity in pursuit of the employer's business or a minor deviation from the strict course of the employee's duties. It was such

17

a marked turning aside from the employer's business as to be inconsistent with its pursuit: driving to a location 140 miles from his assigned worksite, a trip that would take more than six hours to complete, without asking his employer's permission or informing his supervisor that he would be gone, when, according to plaintiffs, Martinez was on call 24 hours, seven days a week, and might be called at any time to proceed to a new location. This activity would be entirely inconsistent with serving the employer's purposes. Consequently, the trip to Bakersfield was, as a matter of law, outside the scope of Martinez's employment.

Plaintiffs attempt to characterize the trip to Bakersfield as part of Martinez's commute between the oil rig in Seal Beach and his home in Caliente. But the evidence presented indicated Martinez did not go home, because it was too far out of the way. Martinez met his wife and daughter at a car dealership in Bakersfield, 45 to 50 miles from his home, in order to sign the documents necessary to purchase a vehicle for his wife. The undisputed evidence does not support a contention that Martinez was commuting between his home in Caliente and the oil rig at the time of the accident.

Plaintiffs argue that the central or critical question in this case is foreseeability; they attempt to divorce that question from the question whether Martinez was engaged in a personal errand or a substantial departure from his employment duties at the time of the accident. The two cannot be separated.

In determining whether an employee's activity was within the scope of employment for respondeat superior purposes, some cases have employed a two-prong test, asking "if the employee's action is (1) 'either required or "incident to his duties"' or (2) 'could be reasonably foreseen by the employer in any event.…' [Citation.]" (*Bailey, supra*, 48 Cal.App.4th at p. 1559.) If the employee's act satisfies either prong of the test, the employer is liable. (*Ibid.*) The *Bailey* court rejected the employee's argument that the two-prong test differed from a foreseeability-based test, concluding that, under either

18

prong of the two-prong test, or under a general foreseeability test, both foreseeability and a nexus between the tortious act and the employment are required. (*Id*. at p. 1561.)

"Respondeat superior liability demands a nexus between the employee's tort and the employment to ensure that liability is properly placed upon the employer. 'The nexus required for respondeat superior liability—that the tort be engendered by or arise from the work—is to be distinguished from "but for" causation. That the employment brought tortfeasor and victim together in time and place is not enough. We have used varied language to describe the nature of the required additional link (which, in theory, is the same for intentional and negligent torts): the incident leading to injury must be an "outgrowth" of the employment ...; the risk of tortious injury must be "'inherent in the working environment'" … or "'typical of or broadly incidental to the enterprise [the employer] has undertaken.'" …' [Citation.] Yet another way to describe the necessary linkage is the employee's tort must be 'foreseeable *in light of* [*the employee's*] *duties*.' [Citation.]" (*Bailey, supra*, 48 Cal.App.4th at p. 1560.)

The court continued:

"Under the first prong of the two-prong test, respondeat superior liability attaches if the employee's act is 'either required or "incident to his duties"….' [Citation.] Such an act would not be considered—in the words of the foreseeability-based test—'so unusual or startling that it would seem unfair' to appropriate the resulting loss to the employer; and any resulting tort could ""'fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer.…"' [Citations.] In other words, when the first prong of the two-prong test is satisfied, so are both the nexus and respondeat superior foreseeability requirements. In addition, respondeat superior foreseeability involves a nexus requirement for liability, and not simply a '"but for" causation.' [Citation.] In short, the foreseeability-based test and the two-prong test are not so much different tests, but different ways of articulating the same test for scope of employment." (*Bailey, supra*, 48 Cal.App.4th at p. 1561.)

The undisputed facts do not support a nexus between the employee's activity—driving to Bakersfield and back to buy a vehicle for his wife—and his employment. After his shift was over, Martinez left the Seal Beach area, where his employer had assigned him to work, and traveled 140 miles to a car dealership to purchase a vehicle. His employer did not send him to Bakersfield; Martinez performed no services for

19

Halliburton during the trip. The trip was a purely personal activity, unrelated to his employment duties. The tort was not engendered by, and did not arise from, Martinez's work. The activity leading to the injury was not an outgrowth of Martinez's employment; it was the result of Martinez's pursuit of his personal interests. "Where an employee pursues his own ends, the use of property or facilities entrusted to him by the principal is an inadequate basis for imputing liability to the employer." (*Alma W., supra*, 123 Cal.App.3d at p. 140.) Thus, where Martinez was engaged in a personal activity, the fact that he used the company truck to accomplish it was insufficient to establish the required nexus between his activity at the time of the accident and his employment with Halliburton. Martinez's trip to Bakersfield was not a minor, foreseeable deviation from his work duties, like stopping on the way home to purchase an item at a nearby store. It was a substantial departure from his employment duties, "so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." (*Id.* at p. 142.) There was no nexus between the trip and Martinez's employment duties.

Caltrans argues that, if there is proof the vehicle belongs to the employer and it is being operated by the employee at the time of the accident, "an inference arises sufficient to support a finding that the employee was operating the automobile (a) by the authority of his employer, and (b) within the scope of his employment." (*Shields v. Oxnard Harbor Dist.* (1941) 46 Cal.App.2d 477, 487.) It contends this inference is sufficient to raise a triable issue of fact regarding scope of employment; because these facts were established, it argues, the inference precluded summary judgment.

In reviewing the grant of summary judgment, "[w]e liberally construe the evidence in support of the party opposing summary judgment [citation] and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards." (*City of San Diego v. Haas*

20

(2012) 207 Cal.App.4th 472, 487.)  The opposing party raises "a  triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra,* 25 Cal.4th 826, 850, fn. omitted.)  In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom." (*Id*. at p. 843.)  Although ownership of the vehicle and employment of the driver may give rise to an inference that the driver was acting within the scope of employment in driving the vehicle, such an inference would not be reasonable when the driver was pursuing his own activities for his own purposes at the time of the accident.  An inference the employee was acting within the scope of employment may be dispelled as a matter of law by "'clear, positive and uncontradicted evidence which is not open to doubt.' [Citation.]" (*Meyer v. Blackman* (1963) 59 Cal.2d 668, 676.)  Considering all of the evidence presented, including the undisputed evidence that Martinez was engaged in a purely personal activity when he traveled to Bakersfield intending to buy a vehicle for his wife, a reasonable trier of fact could not find that Martinez was acting within the scope of his employment on the return trip from Bakersfield.

The incidental benefit exception to the going and coming rule extends the scope of employment only to the employee's commute to and from work.  Even where the exception applies, it brings the commute within the scope of employment only to the extent the employee does not deviate substantially from the commute to pursue his own personal business.  The undisputed evidence indicates Martinez was departing substantially from his commute and his job duties at the time of the accident, and there is no necessary nexus between Martinez's activities at the time of the accident and Halliburton's business enterprise.  Consequently, the trial court correctly determined that Halliburton could not be held liable to plaintiffs on a respondeat superior theory.

21

### III.    Negligent Entrustment or Supervision

Baker's first amended complaint included allegations of negligent hiring and supervision of Martinez and negligent entrustment of the vehicle to him.  Buxbaum's complaint contained a cause of action for negligent supervision of Martinez.  By granting Halliburton's motion for summary judgment, the trial court adjudicated those claims in favor of Halliburton.  Neither plaintiff has challenged the judgment on those claims in this appeal.  Accordingly, we need not address them.

### IV.    Appeal by Caltrans

In a footnote in its respondent's brief, Halliburton asks that we dismiss Caltrans's appeal on the ground Caltrans has no standing to appeal.  Halliburton asserts only an aggrieved party may appeal (Code Civ. Proc., § 902), and Caltrans is not a party aggrieved by the judgments against Baker and Buxbaum and in favor of Halliburton.  We decline Halliburton's request for dismissal, because it did not serve and file a separate motion for such relief as required by California Rules of Court, rule 8.54.

### *DISPOSITION*

The judgment is affirmed.  Halliburton is entitled to recover its costs on appeal.


_____

HILL, P. J.

WE CONCUR:


_____

GOMES, J.


_____

DETJEN, J.

22