Filed 12/14/15  Yankey v. City of Los Angeles CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ESTAZE YANKEY et al., | B257780 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC425757) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mel Red Recana, Judge.  Affirmed.

Blithe S. Bock, Deputy City Attorney, Michael N. Feuer and Amy Jo Field, City Attorneys for Defendants and Appellants.

Law Offices of Dale K. Galipo, Dale K. Galipo and Thomas C. Seabaugh for Plaintiffs and Respondents.

_____

Appellants City of Los Angeles and Los Angeles Police Department (LAPD) Officer Daniel Bunch[1] were found liable for the death of Dontaze Storey. They appeal the judgment which awarded Storey's son $750,000 in damages on the grounds he lacked standing to sue, the trial court committed evidentiary errors, and the damages were excessive. We affirm the judgment.

**FACTS**

Dontaze Storey was shot and killed by two LAPD officers on November 11, 2008. Storey's fiancée, Estaze Yankey, who was five to six weeks pregnant at the time, witnessed the shooting. Their son, Dontaze Storey, Jr., was born on July 7, 2009.[2]

A wrongful death action was filed against the City of Los Angeles on November 12, 2009, alleging the officers used excessive force against Storey. The complaint was later amended to add the police officers as defendants. A jury trial commenced on January 6, 2014. The defense presented testimony from an eyewitness who testified Storey was threatening a young man at a Rite Aid, which led her to call 911. The two police officers testified they believed Storey was pointing a weapon at them when they fired at him. However, several witnesses, including Yankey, testified Storey did not appear to be in a shooting stance at the time the officers opened fire and did not appear to have anything in his hands. Both the medical examiner and the defense's firearm and ballistics examiner testified three of the five gunshot wounds had a left to right, back to front, and downward trajectory, which did not appear to support the officer's version of events. The defense's firearm and ballistics examiner admitted on cross-examination that Storey was "most likely" running when the first shot was fired.

Yankey confirmed Dontaze was Storey's son; she and Storey were together at the time of the shooting and she did not have sexual relations with anyone other than Storey in the previous six months. At trial, Yankey testified Dontaze has a picture of his father

---

[1]     Because they share appellate counsel and their interests are aligned in this matter, we will refer to appellants jointly as the City.

[2]     For clarity, we will refer to the decedent by his last name, Storey, and to his son by his first name, Dontaze.

2

in his bedroom, which they include in their prayers.  Moreover, Yankey observed Dontaze playing by the picture, in an attempt to include his father in his activities. Yankey told the LAPD in an interview, which was read to the jury, that Storey had two other children, a daughter and a son, but had no contact with them.  No one had heard from the mother of his daughter since her birth and the mother of his son gave him up for adoption about six to eight years ago.  Storey had not spoken to his son since he was four. The son, now 10 years old, contacted Storey shortly after his birthday.

The jury returned a verdict against the City and one of the officers, Daniel Bunch. It found excessive force was used to cause Storey's death.  It also found by clear and convincing evidence that Dontaze was Storey's son.  Dontaze was awarded $50,000 in past loss damages and $700,000 in future loss damages.  The City timely appealed.[3] The court later awarded attorney's fees totaling $942,720.[4]

## DISCUSSION

The City contends the jury's verdict must be reversed because Dontaze lacks standing to sue on a wrongful death claim.  They contend Dontaze failed to prove by clear and convincing evidence that he is Storey's son.  The City further challenges the verdict on the ground the trial court erred in allowing four-year-old Dontaze to testify while excluding evidence of Storey's domestic violence against Yankey.  We find neither is sufficient to overturn the jury's verdict.

### I.     Standing

We first address whether Dontaze has standing to sue in this case.  We find he does.

---

**3**     In his respondent's brief, Dontaze requests we dismiss the City's appeal for want of prosecution.  We decline to dismiss the appeal on this basis.  (California Rules of Court, rule 8.54; *Halliburton Energy Services, Inc. v. Department of Transportation* (2013) 220 Cal.App.4th 87, 106.)

**4**     The City's appeal of the attorney's fee award is the subject of a separate appeal and separate opinion at Case No. B259880.

It is well established that a child born out of wedlock has standing to sue for the wrongful death of his parent. (*Arizmendi v. System Leasing Corp.* (1971) 15 Cal.App.3d 730, 737; *Cheyanna M. v. A.C. Nielsen Co.* (1998) 66 Cal.App.4th 855, 877 (*Cheyanna M.*).) In most cases, paternity is shown when the parent holds the child out as his own. (*Cheyanna M., supra,* at p. 866.) If the child is born after the parent has died, however, it is impossible for the parent to do so and other clear and convincing evidence of paternity must be shown. (*Id.* at p. 877.) On appeal, we consider whether substantial evidence supports the jury's finding that paternity was established by clear and convincing evidence. (*Stromerson v. Averill* (1943) 22 Cal.2d 808, 815; *Estate of Britel* (2015) 236 Cal.App.4th 127, 137 (*Britel*); *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 891.) " 'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' " (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750 quoting *Nat. Auto. & Cas. Co. v. Ind. Acc. Com.* (1949) 34 Cal.2d 20, 25.)

Here, Yankey testified Dontaze is Storey's son; she did not have sex with anyone else during the time period of Dontaze's conception. No DNA evidence was presented at trial, however. Neither was there any third party testimony presented regarding their relationship. The City argues Yankey's testimony is insufficient to prove paternity by clear and convincing evidence. According to the City, Dontaze failed to fulfill this "weighty threshold burden" because Yankey's testimony was not corroborated by any medical and third party evidence. The City vigorously asserts that Yankey's testimony was thoroughly discredited because Yankey admitted she and Storey had broken up and were not living together as a couple during the time of conception.

The sole question for this court is whether Yankey's testimony alone constitutes substantial evidence of paternity. We hold that it does. A mother's testimony that she had sex with the father and no others has been found to constitute substantial evidence of paternity. (*See Berry v. Chaplin* (1946) 74 Cal.App.2d 652; *Ramirez v. Romero* (1952)

4

112 Cal.App.2d 319.) "[I]t is well settled that the testimony of one witness entitled to credit is sufficient to establish a fact in a civil case. [Citation.]" (*Minikin v. Hendrix* (1940) 15 Cal.2d 338, 341; *Vollaro v. Lispi* (2014) 224 Cal.App.4th 93, 102; Evid. Code, § 411.)

That Yankey may not have lived with Storey at the time Dontaze was conceived or had broken up with him does not automatically preclude sexual relations between them. It is the jury which resolves conflicts in evidence and we will not disturb its findings where there is substantial evidence supporting it. (*Rice v. California Lutheran Hospital* (1945) 27 Cal.2d 296, 301.) This is because the "credibility of witnesses is a question of fact to be resolved by the jury." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1001.) We decline to adopt the City's position that the testimony of the baby's mother does not constitute substantial evidence of paternity and that it must be corroborated by a third party or by DNA evidence.

That the standard of proof at the trial level was by clear and convincing evidence does not change our standard of review. Even in cases involving punitive damages where we are instructed to pay "due attention to the heightened standard of proof," we nevertheless "review the evidence in the light most favorable to the [prevailing party], give them the benefit of every reasonable inference, and resolve all conflicts in their favor[.]" (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1299.) "When there is substantial evidence to support the jury's actual conclusion, 'it is of no consequence that the [jury] believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.' [Citation.]" (*Id.* at p. 1301.)

The City's reliance on *Britel, supra,* 236 Cal.App.4th 127, for the proposition that a clear and convincing standard of proof at the trial level somehow translates into a heightened level of review on appeal is misplaced. In *Britel,* the court was tasked with deciding whether the mother had established by clear and convincing evidence the father openly held the child as his own. (*Id.* at p. 136.) The court determined substantial evidence supported the trial court's finding that mother had not met her burden because the father never openly acknowledged paternity to his family or friends. Instead, he told

5

the mother to stop contacting him. (*Id.* at p. 138.) *Britel* does not address the question of whether uncorroborated testimony from the mother about paternity constitutes substantial evidence, even under a clear and convincing standard of proof.

## II. Evidentiary Rulings

The City next contends it was denied a fair trial when the trial court allowed four-year- old Dontaze to testify briefly, but then excluded all evidence of Storey's domestic violence against Yankey. According to the City, "[t]he total impact of these two rulings—allowing the 4-year old plaintiff to testify but excluding evidence of domestic violence on his mother—was extraordinarily prejudicial."

As we shall explain, we find the trial court did not abuse its discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 201 [a trial court's admission or exclusion of evidence is reviewable for abuse of discretion].) Dontaze was a qualified witness and evidence of domestic violence against Yankey was not relevant to the relationship Dontaze may have had with his father. Having found no error in these individual evidentiary rulings, we also conclude their claimed cumulative effect did not deny the City a fair trial.

### A. Testimony by Four-Year Old Dontaze

The City argues that Dontaze was not competent to testify because he was unable to understand his duty to tell the truth as required by Evidence Code section 701 subdivision (a). At trial, four-year-old Dontaze testified as follows:

"Q. What is your name?

A. Dontaze.

Q. Okay. And your daddy went to heaven; is that right?

A. Uh-huh.

Q. And do you have a picture of your daddy at your home?

A. Yeah.

Q. And do you wish your daddy was still here with you?

A. Yeah.

Q. And what would you do—want to do with your daddy if he was here?

A. Play games and play toys, and mama play games and toys."

6

The defense had no questions for Dontaze.

Prior to his testimony, the trial court conducted a hearing outside the presence of the jury to determine whether Dontaze was capable of understanding his duty to tell the truth. (Evid. Code, § 701 subd. (a).) During the hearing, plaintiff's counsel asked Dontaze whether he knew it was important to tell the truth, to which he replied, "yeah." Dontaze also told defense counsel on cross-examination, "no lying and you have to be good." He also correctly told her she was holding up two fingers. However, she asked him, "So if I'm holding up two fingers, but I tell you I'm only holding up one finger, is that a lie or is that the truth?" He replied, "That's the truth." Then, defense counsel asked, "You see how the water is all the way full [in the water bottle]. If I told you the water was only [half] full, would that be the truth or would that be a lie?" He again said it would be the truth.

The trial court admitted Dontaze's testimony over defense objection that he was unable to understand the difference between a truth and a lie. The trial court explained, "The question []whether the bottle is full or half empty I think is not for a child of four years old. [It] is not easy to understand." Given his responses to simpler questions, the trial court found "that he's capable of understanding, and telling you how he sees it in his age of four years old."

The trial court did not abuse its discretion when it found Dontaze was qualified to testify. As a general rule, every person, irrespective of age, is qualified to be a witness. However, a person may be disqualified to testify if (1) the witness is incapable of expressing himself or herself so as to be understood, or (2) the witness is incapable of understanding the duty to tell the truth. (Evid. Code, § 701, subd. (a).) The party challenging the witness bears the burden of proving disqualification, and a trial court's determination will be upheld in the absence of a clear abuse of discretion. (*People v. Mincey* (1992) 2 Cal.4th 408, 444 (*Mincey*).)

Two cases involving young witnesses serve to highlight the difference between a qualified witness and one who is not. In *Mincey, supra,* 2 Cal.4th 408, a five year old was asked to testify to events on the night of her brother's murder. The trial court found

7

she was competent to testify because she answered yes to whether she knew the difference between telling the truth and lying, and whether she would tell the truth in responding to questions. Although the child's brief testimony was inconsistent and she was unable to recall some details of that night, those facts did not disqualify her from testifying. Instead, they went to the weight of her testimony. (*Id.* at p. 444.)

In *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, on the other hand, a four-year-old boy and a three-year old girl were found not competent to testify at a contested jurisdictional hearing because they were incapable of understanding the duty to tell the truth. When the four-year-old boy was asked, " 'Do you know what the truth is?' " and " 'Do you know what a lie is?' " he answered, " 'No.' " He also said, " 'It's good to tell lies.' " (*Id.* at p. 1016.) The three-year-old girl was unable to testify beyond a "basic level" and was not questioned at all as to her understanding of the duty to tell the truth. (*Ibid.*)

This case is closer to the five-year-old witness in *Mincey* than the four and three-year-old witnesses in *In re Daniel Z.* Like the witness in *Mincey,* Dontaze showed he had the capacity to understand simple questions and truthfully answer them. His answers to the more complicated questions posed by defense counsel seem more likely to reflect confusion about a multi-part question than an inability to communicate truthful testimony. In light of Dontaze's demonstrated ability to separate truth from lies, we cannot conclude the trial court's decision allow him to testify was "arbitrary, capricious, or patently absurd . . ." (*Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 678.) The trial court did not abuse its discretion to find that defense counsel's questions were too complicated for a four-year old to digest.

**B. Evidence of Domestic Violence**

At trial, the City sought to introduce evidence of the domestic violence between Yankey and Storey. In particular, Yankey reported to the police that Storey bit her tongue, held her down, and attempted to rape her six weeks before his death. Five days before the shooting, Yankey had Storey arrested for domestic violence. The trial court

8

declined to allow this evidence before the jury. The trial court did not abuse its discretion in doing so.

Only relevant evidence is admissible. (Evid. Code, § 350.) Further, a trial court may exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, confusion, or misleading the jury. (Evid. Code, § 352.)

Here, Yankey does not seek damages on her own behalf. Her sole role in the lawsuit is as guardian ad litem to Dontaze. Thus, her relationship with Storey has minimal relevance to what type of relationship Dontaze would have had with Storey had he lived. Even assuming the history of domestic violence between Storey and Yankey is somehow relevant to Dontaze's claims, its probative value is substantially outweighed by the substantial danger of undue prejudice, confusion, or misleading the jury. Had evidence of the domestic violence been allowed, a mini-trial focused on Storey's character would have likely ensued, creating confusion and undue prejudice against Storey for his conduct towards Yankey. The trial court did not abuse its discretion in excluding this evidence.

## III. Damages

The City next claims the evidence does not support a finding Dontaze would have received $750,000 worth of love and companionship from a violent father who was absent from his other children's lives. Specifically, the City contends evidence that Storey ignored his other children supports its position that the jury's award was the result of passion or prejudice. This argument is without merit.

There is no fixed standard by which we can determine that an award is excessive. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 614-615 (*Rufo*).) Under Code of Civil Procedure section 377.61, the trier of fact in a wrongful death action may award such damages as are just under all the circumstances of the case. Damages for wrongful death are measured by the financial benefits the heirs were receiving at the time of death, those reasonably to be expected in the future, and the monetary equivalent of loss of comfort, society, and protection. (*Corder v. Corder* (2007) 41 Cal.4th 644, 661.) "Recovery for

loss of affection and society in a wrongful death action thus fulfills a deeply felt social belief that a tortfeasor who negligently kills someone should not escape liability completely, no matter how unproductive his victim." (*Borer v. American Airlines, Inc*. (1977) 19 Cal.3d 441, 452.)

We review the jury's award under the substantial evidence standard since the amount awarded is peculiarly within the jury's discretion. (*Rufo, supra,* 86 Cal.App.4th at pp. 614-615.) We usually defer to the jury's discretion unless the record shows inflammatory evidence, misleading instructions, or improper argument by counsel that would suggest the jury relied on improper considerations. (*Ibid*.) We will interfere only when the award is so disproportionate to the injuries suffered that it shocks the conscience and virtually compels the conclusion the award was based on passion or prejudice. (*Ibid*.)

In *Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, an award of $750,000 to each son of a man who died while in police custody was found not to be excessive or the result of passion or sympathy despite the fact that the decedent left Mexico without telling his family, never returned for a visit, limited his contact with them to the occasional phone call, and did not support his family financially. Further, his sons never visited him and did not attend his funeral in the United States. (*Id.* at p. 720.)

With *Mendoza* and the standard of review in mind, we decline to second guess the jury's award, which is not so disproportionate that it shocks the conscience. Here, a child has been denied *any* relationship with his father, flawed as he may have been, as a result of the officers' actions. Like the father in *Mendoza*, Storey would likely not have been father of the year. However, Storey was engaged to Yankey. Yankey testified they were at Rite Aid the night of the shooting to buy prenatal vitamins. The jury could infer from this evidence that Storey intended to have a relationship with his son. Substantial evidence supports the jury's award.

At trial, the jury was made aware Storey would likely not be a model father. It heard evidence that Storey had never met his daughter and had not spoken with his 10-year-old son since he was four. The evidence indicated, however, that no one had heard

10

from his daughter's mother after she told him she was pregnant with his child.  Further, there was no indication Storey was not receptive to a relationship with his 10-year-old son after he was contacted.

That the jury did not hear about Storey's violence towards Yankey does not change our determination.  As we explained above, Yankey's relationship with Storey lacked sufficient probative value to overcome its prejudice.  In any case, the jury heard evidence of Storey's violent character through testimony regarding his altercation with the young man at Rite Aid.  Given the state of the evidence, we decline to find the jury's award was based on prejudice or passion.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.


BIGELOW, P.J.

We concur:


FLIER, J.


GRIMES, J.


11