Filed 3/8/22  Rivera v. TransAm Trucking CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| VERONICA R. RIVERA et al., | |
| Plaintiffs and Appellants, | E075289 |
| v. | (Super.Ct.No. CIVDS1709703) |
| TRANSAM TRUCKING, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Donna M. Garza, Judge.  Affirmed in part, reversed in part with directions.

Banafsheh Danesh & Javid, Mark Evans Millard and Joseph G. Younes for Plaintiffs and Appellants.

Freeman, Freeman & Smiley, Dawn B. Eyerly and John D. Stanley for Defendant and Respondent.

## I. INTRODUCTION

Plaintiffs and appellants Veronica R. Rivera, Ignacio Hernandez Ponce, and Sarah M. Arias, sued defendants, Devon Cody Gouvion, and Gouvion's employer, respondent TransAm Trucking, Inc. (TransAm), for personal injuries plaintiffs allegedly sustained during a motor vehicle accident with Gouvion on May 29, 2015. The complaint alleges that Gouvion, while driving TransAm's tractor trailer truck on Foothill Boulevard in Fontana, made an unsafe lane change and sideswiped Rivera's vehicle. Rivera was driving, and Ponce and Arias were passengers in Rivera's vehicle.

The complaint alleges two theories of recovery against TransAm: (1) as Gouvion's employer, TransAm is vicariously liable to plaintiffs for Gouvion's negligence, if any, in causing the accident under the respondeat superior doctrine, and (2) TransAm is directly liable to plaintiffs for TransAm's own negligence in hiring, supervising, and entrusting its tractor-trailer truck to Gouvion. TransAm moved for summary judgment or summary adjudication of plaintiffs' two alleged causes of action—the first for "general negligence" and the second for "motor vehicle." The trial court entered summary judgment in favor of TransAm on the entire complaint.

Plaintiffs appeal, claiming (1) there are triable issues of material fact concerning both the respondeat superior and the negligent hiring, supervision, and entrustment theories of recovery against TransAm; (2) in granting summary judgment, the court did not comply with subdivision (g) of section 437c of the Code of Civil Procedure[1]—that is,

_____

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

the court failed to explain how the evidence it cited in support of its ruling showed that there were no triable issues of material fact; (3) the court erroneously denied plaintiffs' request to continue the motion to conduct further discovery (§ 437c, subd. (h)); and (4) the court, *at most*, should have granted summary adjudication of the first cause of action, but not summary judgment on the entire complaint, because the "motor vehicle" cause of action alleged a third theory of recovery: that TransAm owned and gave Gouvion permission to use its truck and, on that basis, was liable for Gouvion's negligence, if any, in causing the accident under Vehicle Code section 17150.

We agree only with plaintiffs' fourth claim of error. TransAm's motion did not address the owner/permissive user claim alleged in the second "motor vehicle" cause of action. Thus, the judgment in favor of TransAm on the entire complaint must be reversed with directions to grant summary adjudication of plaintiffs' first cause of action for general negligence against TransAm only. At trial, plaintiffs may not proceed against TransAm under the summarily adjudicated theories of respondeat superior or negligent hiring, supervision, and entrustment, but their owner/permissive use claim against TransAm remains viable. (Veh. Code, §§ 17150, 17151.)

For reasons we explain, there are no triable issues of material fact concerning whether the respondeat superior doctrine applies or whether TransAm negligently hired, supervised, or entrusted its truck to Gouvion. TransAm adduced undisputed evidence that, at the time of the May 29, 2015 accident, Gouvion was "off duty" for TransAm and had been off duty for two days, since May 27, when he delivered a load of cargo in Wilmington, California. When the accident occurred, Gouvion was on a purely personal

3

errand or "personal conveyance"; he was driving TransAm's truck either to or from a grocery store, ostensibly to buy groceries for himself and his traveling companion, Ms. S.

No evidence was adduced concerning many questions, including what Gouvion was doing in Fontana on May 29, 2015; where he was staying on the nights of May 26 through May 29; whether and, if so to what extent, TransAm was paying for Gouvion's hotel and other expenses during his May 2015 trip to California; or when Gouvion was expected to return to duty or did return to duty for TransAm after the accident. But it is plaintiffs' burden to prove that the respondeat superior doctrine applies, and plaintiffs did not adduce evidence sufficient to raise a triable issue of material fact indicating that Gouvion was acting within the scope of his employment at the time of the accident. Based on all of the evidence submitted, no reasonable juror could conclude that Gouvion was acting within the scope of his employment at the time of the accident.

Similarly, concerning plaintiffs' negligent hiring, supervision, and entrustment claim, TransAm adduced undisputed evidence that it investigated Gouvion's background and driving record before hiring him, and found no reason to believe he was unqualified, unfit, or incompetent to drive a tractor trailer truck or posed a particular risk of harm to others while driving such a truck. (See CACI Nos. 426, 724.) In the face of TransAm's initial showing, plaintiffs did not raise a triable issue of material fact indicating that TransAm was negligent in hiring, supervising, or entrusting its truck to Gouvion. Based on all of the evidence submitted, no reasonable juror could conclude that TransAm was negligent in hiring, supervising, or entrusting its truck to Gouvion.

4

## II. FACTS AND PROCEDURE

### A. *The Allegations of Plaintiffs' Complaint*

In a Judicial Council form complaint, plaintiffs allege two causes of action against Gouvion and TransAm: "general negligence" (first) and "motor vehicle" (second). In both causes of action, the complaint alleges that TransAm is both vicariously and directly liable to plaintiffs for the injuries they sustained during their May 29, 2015 motor vehicle accident with Gouvion. It alleges TransAm is vicariously liable for Gouvion's negligence, if any, in causing the accident under the respondeat superior doctrine because Gouvion was acting within the scope of his employment for TransAm when the accident occurred. It alternatively alleges that TransAm is directly liable to plaintiffs for TransAm's own negligence in hiring, supervising, and entrusting its tractor trailer truck to Gouvion. In its second cause of action, the complaint further alleges that TransAm owned and gave Gouvion permission to operate the vehicle involved in the accident.

### B. *TransAm's Motion for Summary Judgment or Summary Adjudication*

TransAm moved for summary judgment or, alternatively, summary adjudication of each cause of action. TransAm claimed it was not vicariously liable for Gouvion's negligence, if any, under the respondeat superior doctrine because Gouvion was on a "personal conveyance," and was therefore not acting within the scope of his employment, when the accident occurred. TransAm also claimed it was not negligent in hiring, supervising, or entrusting its truck to Gouvion. TransAm adduced the following evidence in support of its motion.

5

1.  TransAm's Initial Showing

In March 2015, Gouvion turned age 22 and obtained his commercial driver's license. He worked for TransAm from April 1 through June 15. At the time of the May 29 accident, Gouvion was driving one of TransAm's tractor-trailer trucks.

(a) *Scope of employment*; *respondeat superior*

Gouvion was "off duty" and was "not hauling a load or performing any services for TransAm" at the time of the May 29, 2015 accident. Based on this evidence, TransAm claimed that Gouvion was not acting within the scope of his employment for TransAm at the time of the accident; thus, TransAm was not vicariously liable to plaintiffs for Gouvion's negligence, if any, in causing the accident, under the respondeat superior doctrine.

TransAm required all of its drivers, including Gouvion, to "maintain a log tracking their time while using company vehicles," and Gouvion kept such a log. In their logs, TransAm's "[d]rivers note[d] the time they spend pre-trip, driving, and post-trip, including time spent on and off duty." Gouvion's log showed that he "began a trip in Holcomb, Kansas on May 23, 2015," and completed the trip on May 26, when he delivered a load of cargo to Tyson Foods in Wilmington, California.[2] Gouvion's log also showed that he was "off duty for the entirety of May 28 and 29, 2015." TransAm's drivers would record their personal trips as "personal conveyance[s]," and Gouvion's log showed that he was on a "personal conveyance" at the time of the May 29 accident.

---

[2] A memorandum from Tyson Foods also confirmed that Gouvion delivered a load of cargo in Wilmington on May 26, 2015.

6

TransAm did not consider its drivers to be " 'on the job' " when they were using one of TransAm's vehicles for "personal purposes." TransAm allowed its drivers to use its vehicles "for personal errands when they [were] away from home" because its drivers "would often have no personal transportation otherwise." "For example, drivers [were] allowed to use their trucks to visit a grocery store when they stop[ped] for the night," which is what TransAm understood Gouvion was doing at the time of the accident. "No one at TransAm was informed that Gouvion was traveling to and from a store for personal reasons [on May 29, 2015], nor did anyone need to be."

(b) *Negligent hiring, supervision, and entrustment*

In support of its claim that it was not negligent in hiring, supervising, or entrusting its tractor-trailer truck to Gouvion, TransAm claimed it "subjected Gouvion to a rigorous screening process before he was hired." For example, TransAm confirmed that Gouvion had never been convicted of a crime, and that his personal and commercial driver's licenses had never been suspended.

Before hiring Gouvion, TransAm also required Gouvion to "pass a comprehensive drug test." TransAm confirmed that Gouvion had a valid commercial driver's license, was not disqualified to work as a commercial driver (49 C.F.R. 391.15), and was eligible to be employed in the United States. In compliance with federal regulations, TransAm reviewed Gouvion's driving record (49 C.F.R. 391.25) and provided Gouvion with "entry-level driver training" (49 C.F.R. 380.503). There was no record of Gouvion's personal or commercial driver's license ever having been suspended.

7

TransAm employed an employee screening company to "further investigate" Gouvion's driving record and criminal background before Gouvion was hired. Through this process, TransAm discovered that Gouvion did not have a criminal record but had two prior traffic citations: (1) a speeding ticket for traveling 10 miles an hour above the speed limit on June 17, 2012, and (2) a citation for failing to yield the right of way on April 23, 2013. Gouvion received these prior citations while operating a "personal" vehicle. In his employment application, Gouvion reported having one "preventable," "side swipe" accident on May 25, 2014, which did not involve any injuries. Gouvion had no citations, arrests, or vehicle accidents during the time he worked for TransAm before the May 29, 2015 accident.

TransAm monitored its drivers, including Gouvion, when they were on the road with a global positioning system (GPS) device to ensure that they did not "stray off course" while carrying cargo and could be located in case of an emergency. TransAm's GPS device showed that, on May 26, 2015, Gouvion was in Wilmington, California, the "endpoint for his load." In addition, federal regulations do not allow "unauthorized passengers" to be transported without the carrier's written permission (49 C.F.R. 392.60), but Gouvion had TransAm's written permission to take Ms. S. with him on his May 2015 trip to California.

C. *Plaintiffs' Opposition*

In their opposition to the motion, plaintiffs claimed Gouvion was "legally" acting within the scope of his employment for TransAm at the time of the accident, and that TransAm also negligently hired, supervised, and entrusted its truck to Gouvion.

Plaintiffs showed that, at the time of the May 29, 2015 accident, Gouvion was living in Gerard, Kansas, and that TransAm's principal place of business was in Olathe, Kansas. Ms. S. also lived in Kansas.

In support of its claim that Gouvion was acting within the scope of his employment at the time of the accident, plaintiffs noted that the accident occurred "at the half way point of his planned delivery"—that is, while Gouvion was still in California, after he had completed his cargo delivery in Wilmington, but before he began his return trip to Kansas. Plaintiffs argued it was "a customary part of TransAm's long haul trucking business to have [its] drivers stay overnight in out of state locations"; that "traveling to grocery stores" was "customary and incidental" to the drivers' "out of town stays"; and that it was "foreseeable, indeed planned," that Gouvion would use TransAm's truck for personal errands during his May 2015 trip to California.

In support of its claim that TransAm was negligent in hiring, supervising, and entrusting its tractor-trailer truck to Gouvion, plaintiffs noted that Gouvion was "a 22-year-old young man with no prior commercial truck driving experience," who had just obtained his Class A commercial driver's license, and there was "no proof" that Gouvion had completed a truck driving school. Plaintiffs also pointed out that, in his responses to written discovery, Gouvion admitted causing "a prior, similar sideswipe 'preventable' collision," and that Gouvion provided TransAm with inadequate personal references and prior employment contact information when he applied for employment with TransAm in March 2015. Plaintiffs argued TransAm negligently entrusted its tractor-trailer truck to Gouvion, both by permitting him to drive the truck to a grocery store and by permitting

9

"a young female companion [(Ms. S.)] to ride along" with him during his May 2015 round trip from Kansas to California. Plaintiffs maintained that TransAm adduced "zero evidence" of Gouvion's commercial driver qualifications, skills, and training, and "no evidence" that TransAm had "closely supervised Gouvion while he was on the job."

Plaintiffs adduced a "Dashcam" video recording of the cab area of the truck that Gouvion was driving at the time of the accident, which appeared to show Gouvion and Ms. S. lighting and smoking cigarettes before and at the time of the accident. Gouvion was not cited or charged with any traffic violation or crime in connection with the accident.

D. *Plaintiffs' Continuance Request (§ 437c, subd. (h))*

In their opposition, plaintiffs also claimed they had not completed their discovery, and that TransAm had "withheld" discovery in the case. On this basis, plaintiffs asked the court to either deny the motion or continue the hearing on the motion to allow plaintiffs to conduct further discovery. (See § 437c, subd. (h).) Plaintiffs claimed that TransAm "refused to produce documents" and was now relying on some of those unproduced documents to support its motion. Plaintiffs asked the court to continue the hearing "to allow for discovery *that may exist to support* [*the*] *opposition*," specifically, the depositions of Gouvion, the two TransAm employees who submitted declarations in support of TransAm's motion, and the declaration of the "PMK's [(persons most knowledgeable)] specific to the issues raised." (Italics added.)

10

E. *TransAm's Reply*

In its reply, filed November 13, 2019, TransAm pointed out that the complaint was filed on May 24, 2017, and trial was set to begin on February 18, 2020, but plaintiffs had "failed to notice even one deposition" and there was "simply no good cause" to continue the hearing on the motion to allow plaintiffs to conduct "any purported discovery." TransAm also noted that plaintiffs had "more than sufficient time to conduct any necessary discovery," and "the time ha[d] passed for plaintiffs to move to compel further responses" to its prior discovery.

Neither TransAm nor plaintiffs adduced any evidence concerning what Gouvion was doing in Fontana on May 29, 2015, where he stayed on the nights of May 26 through May 29; whether, and if so to what extent, TransAm paid or agreed to pay for his hotel and other expenses during his May 2015 trip to California; or when he was expected to return to duty or did return to duty for TransAm following the May 29 accident.

Federal regulations prohibit motor carriers from permitting or requiring any driver to drive a property-carrying commercial motor vehicle unless the driver has first taken 10 consecutive hours off duty.  (49 C.F.R. 395.3(a)(1).)  A driver also may not drive after driving for a period of 14 consecutive hours (49 C.F.R. 395.3(a)(2)), or after being on duty for either (1) 60 hours in any seven-consecutive day period, if the employing motor carrier does not operate commercial motor vehicles every day of the week, or (2) 70 hours in any eight-consecutive day period, if the carrier does operate commercial motor vehicles every day of the week.  (49 C.F.R. 395.3(b)(1), (2).)

11

The record indicates that federal regulations did not require Gouvion to be off duty on May 28 and 29, 2015. The record shows that Gouvion was on duty for various periods of time on May 23 through May 27. But, as of around 3:00 a.m. on May 28, Gouvion had been off duty for more than 10 consecutive hours. Thus, he was eligible to drive for TransAm on May 28 and 29.

F. *The Trial Court's Rulings and Order Granting TransAm's Motion*

At plaintiffs' request, the court took judicial notice of the Kansas Commercial Driver License Manual but denied plaintiffs' request to take judicial notice of the California Highway Patrol's police report of the May 29, 2015 accident. The court sustained some of plaintiffs' evidentiary objections to portions of the declarations of the two TransAm employees, D.C. and R.M., submitted in support of the motion.[3]

At a December 17, 2019 hearing on the motion, the court ruled that all of the papers showed there was no triable issue of material fact, and TransAm was entitled to judgment on the complaint as a matter of law. The court ruled that TransAm met its initial burden of showing both that Gouvion was not acting within the scope of his employment when the May 29, 2015 accident occurred, and that TransAm was not negligent in hiring, supervising, or entrusting its tractor-trailer truck to Gouvion. Regarding the vicarious liability or scope of employment issue, the court said, "what was

---

[3] Because neither party challenges the court's evidentiary rulings, we disregard all of the evidence that the court excluded, namely, the police report of the accident and portions of the declarations of the two TransAm employees. (§ 437c, subd. (c); see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 526 [trial court must consider all evidence adduced on summary judgment motion unless an objection to the evidence is raised and sustained].)

12

persuasive was that the driver [(Gouvion)] had been off work for two days . . . . There was no going, at that point, to the place of employment or coming from the place of employment." The court granted TransAm's motion for summary judgment and entered judgment in favor of TransAm on plaintiffs' entire complaint. This appeal followed.

## III. DISCUSSION

Plaintiffs claim that TransAm's motion for summary judgment was erroneously granted because there are triable issues of material fact concerning two theories of liability they pleaded against TransAm in their complaint, namely: (1) whether TransAm is vicariously liable to plaintiffs for Gouvion's negligence, if any, in causing the accident under the respondeat superior doctrine, and (2) whether TransAm is directly liable to plaintiffs for TransAm's own negligence in either hiring, supervising, or entrusting its truck to Gouvion. We conclude that all of the evidence adduced on the motion shows that TransAm is not liable to plaintiffs under either theory of liability as a matter of law.

A. *Standard of Review on Summary Judgment*

A summary judgment is properly granted if all the papers submitted on the motion show there are no triable issues of material fact and the moving party is entitled to a judgment as a matter of law. (§ 437c, subd, (c); *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) On appeal from a judgment following an order granting summary judgment, we review the order de novo, considering all of the evidence adduced on the motion (except evidence the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Merrill v. Navegar, Inc., supra*, at p. 476.) We liberally construe the evidence in support of the opposing party and resolve all doubts

13

concerning the evidence in favor of that party. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

A defendant moving for summary judgment bears an initial burden of showing that each of the plaintiffs' causes of action have no merit. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 849-851 (*Aguilar*).) The defendant meets this burden by producing sufficient evidence to make a prima facie evidentiary showing that (1) one or more elements of each cause of action cannot be established, or (2) there is a complete defense to each cause of action. (*Id*. at p. 849; § 437c, subd. (o).) If the defendant meets its initial burden, the burden shifts to the plaintiff to produce evidence of a triable issue of material fact concerning the challenged element or defense. (*Aguilar*, at p. 850; § 437c, subd. (p)(2).) Generally, however, from commencement to conclusion on the motion, the moving defendant bears the burden of persuasion that there is no triable issue of material fact and that the defendant is entitled to judgment as a matter of law. (*Aguilar*, at p. 850.)

The trial court's stated reasons for granting summary judgment " 'are not binding on us because we review its ruling, not its rationale.' " (*Ram's Gate Winery, LLC v. Roche* (2015) 235 Cal.App.4th 1071, 1079.) In reviewing an order granting summary judgment, " ' " we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue." ' " (*Johnson v. Open Door Community Health Centers* (2017) 15 Cal.App.5th 153, 157.) "There is a triable issue of material fact if, and only if,

14

the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

B. *TransAm Is Not Vicariously Liable for Gouvion's Negligence, if Any, in Causing the Accident with Plaintiffs Under the Respondeat Superior Doctrine*

1. The Respondeat Superior Doctrine, Overview

Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of its employees committed within the scope of the employment. (*Perez v. Van Groningen & Sons* (1986) 41 Cal.3d 962, 967-968 (*Perez*).) The doctrine was formerly justified by various theories, including the employer's "control" over the employee and the employer's " 'privilege' " of employing others. (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d. 956, 959 (*Hinman*).) But " 'the modern justification' " for the doctrine, accepted in California for over 100 years as of this writing, "is a rule of policy, a deliberate allocation of a risk. [¶] The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business." (*Id*. at pp. 959-960.)

This modern justification for the respondeat superior doctrine has been called the "risks-of-the-enterprise principle." (*Moreno v. Visser Ranch, Inc.* (2018) 30 Cal.App.5th 568, 576.) Under this principle, a risk is within the scope of the employment if, in the context of the employer's business enterprise, the employee's conduct " 'is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is

15

one of vicarious liability, the inquiry should be whether the risk was one "that may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer.' " (*Perez*, *supra*, 41 Cal.3d at p. 968.)  Stated yet another way, an employer's vicarious liability for an employee's torts "extends beyond" the employer's "actual or possible control of the employee to include risks inherent in or created by the [employer's] enterprise." (*Ibid*; *Hinman*, *supra*, 2 Cal.3d at p 960.)

"One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity [or enterprise]." (*Rodgers v. Kemper Constr. Co.* (1975) 50 Cal.App.3d. 608, 618-619.)  " ' "[F]oreseeability" as a test for *respondeat superior* merely means that *in the context of the particular enterprise* an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004 (*Farmers*).)  Such a test is "useful because it reflects the central justification for respondeat superior:  that losses fairly attributable to an enterprise—those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business." (*Ibid.*)

"One traditional means of defining this foreseeability is seen in the distinction between minor '*deviations*' and substantial '*departures*' from the employer's business. The former are deemed foreseeable and remain within the scope of employment; the latter are unforeseeable and take the employee outside the scope of his employment.  [¶] . . . '[O]nly a *substantial* deviation or *departure* takes the employee outside the scope of

16

his employment.  If the main purpose of his activity is still the employer's business, it does not cease to be within the scope of the employment by reason of incidental *personal acts*, slight delays, or deflections from the most direct route.  The term "*deviation*" is ordinarily used to describe these minor deflections, and "*departure*" to describe the abandonment which takes the acts outside the scope of employment.' "  (*Lazar v. Thermal Equipment Corp.* (1983) 148 Cal.App.3d 458, 465 (*Lazar*), third and fourth italics in original; other italics added.)

"In California, the scope of employment has been interpreted broadly under the respondeat superior doctrine.  For example, '[t]he fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer.'  (*Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 139 . . . .)  Thus, acts necessary to the comfort, convenience, health, and welfare of the employee *while at work*, though strictly personal and not acts of service, do not take the employee outside the scope of employment.  (See *ibid*.)  . . . ' "[W]here the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, *unless it clearly appears that neither directly nor indirectly could he have been serving his employer*." ' "  (*Farmers*, *supra*, 11 Cal.4th at p. 1004, italics added.)

But when an employee commits a tort while engaging in a purely personal errand, the employee is neither directly nor indirectly serving the employer, and the employer is not vicariously liable for the employee's tort under the respondeat superior doctrine.

17

(*Sunderland v. Lockheed Martin Aeronautical Systems Support Co.* (2005) 130 Cal.App.4th 1, 7-11.) "If an employee's act is purely personal, it is not 'typical of or broadly incidental to the employer's enterprise.' [Citation.] If the main purpose of the injury-producing activity 'was the pursuit of the employee's personal ends, the employer is not liable.' " (*Id*. at p. 11 [rear-end accident that employee caused in drive-through lane at fast food restaurant was not within the scope of the employment; thus, employer was not vicariously liable to the plaintiffs for the employee's negligence in causing the accident under respondeat superior doctrine].)

The personal errand exception to the respondeat superior liability doctrine was applied in *Halliburton Energy Services*, *Inc. v. Department of Transportation* (2013) 220 Cal.App.4th 87, 102 (*Halliburton*). There, the employee, who lived near Bakersfield, was assigned by his employer, Halliburton, to work 12-hour shifts on an oil rig near Seal Beach. (*Id*. at p. 92.) Between one of his shifts, the employee used a company truck to make a personal errand. (*Ibid*.) He drove to Bakersfield, where he met his wife and daughter at a car dealership to purchase a vehicle for his wife. (*Ibid*.) On his return trip to Seal Beach, he was involved in an auto accident. (*Ibid*.) *Halliburton* held that the respondeat superior doctrine did not apply because the employee's trip to Bakersfield "was entirely personal" and was "not made in the furtherance of any business activity of the employer." (*Id*. at p. 102.) Thus, the risk of the auto accident was "not a risk inherent in, or ' " 'typical of or broadly incidental' to " ' Halliburton's enterprise." (*Ibid*.)

18

A plaintiff who sues an employer for an employee's negligence under the doctrine of respondeat superior, as plaintiffs do here, has the burden of proving that the employee was acting within the scope of the employment. (*Moreno v. Visser Ranch, Inc.*, *supra*, 30 Cal.App.5th at p. 576.) " 'Generally, whether an employee is within the scope of employment is a question of fact; however, when the facts of a case are undisputed and *conflicting inferences may not be drawn* from those facts, whether an employee is acting within the scope of employment is a question of law.' " (*Sumrall v. Modern Alloys, Inc.* (2017) 10 Cal.App.5th 961, 968.)

2. The Personal Errand Exception to the Respondeat Superior Doctrine Applies

In its motion, TransAm adduced evidence that Gouvion was driving TransAm's truck on a purely personal errand, having nothing to do with TransAm's business at the time of the May 29, 2015 accident with plaintiffs. (*Halliburton*, *supra*, 220 Cal.App.4th at p. 102; *Sunderland*, *supra*, 130 Cal.App.4th at pp. 7-12.) TransAm showed that, at the time of the May 29 accident, Gouvion had been "off duty" for two days, he was not hauling any cargo for TransAm, and he was on a personal errand—he was either going to or coming from a grocery store.

TransAm thus met its initial burden of showing that plaintiffs could not establish an essential element of their vicarious liability claim—the element that Gouvion was acting within the scope of his employment for TransAm at the time of the accident. (*Perez*, *supra*, 41 Cal.3d at pp. 967-968; *Aguilar*, *supra*, 25 Cal.4h at p. 849.) TransAm's initial showing would require a reasonable trier of fact to find that *it was more likely than*

19

*not* that Gouvion was *not* acting within the scope of his employment at the time of the accident. (See *Aguilar*, *supra*, 25 Cal.4th at p. 851.)

TransAm's initial showing shifted the burden to plaintiffs to raise a triable issue of material fact indicating that Gouvion was, in fact, acting within the scope of his employment at the time of the accident. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) But plaintiffs did not meet this burden. Based on all of the evidence presented on the motion, no reasonable trier of fact could conclude that Gouvion was acting within the scope of his employment at the time of the accident. Thus, under the respondeat superior doctrine, TransAm is not vicariously liable to plaintiffs for Gouvion's negligence, if any, in causing the accident, as a matter of law.

Plaintiffs argue that undisputed evidence shows that TransAm is vicariously liable for Gouvion's negligence, if any, in causing the accident under the respondeat superior doctrine, as a matter of law. Plaintiffs point out that it is "a customary part" of TransAm's long haul trucking business to have its drivers stay overnight in out-of-state locations, and grocery store trips are likewise "customary and incidental to [its] driver's out of town stays." Thus, plaintiffs argue, "driving a tractor-trailer to a grocery store was foreseeable, indeed planned for, by TransAm policy."

Indeed, TransAm's director of safety and compliance, D.C., admitted in his declaration adduced in support of the motion that TransAm allowed its drivers to use its vehicles for personal errands when they were "away from home," given that they "would often have no personal transportation otherwise." D.C. continued: "For example, drivers

20

are allowed to use their trucks to visit a grocery store when they stop for the night," as D.C. understood Gouvion was doing at the time of the accident.

Plaintiffs also point out that Gouvion "was in California to benefit his employer," that Gouvion had not completed his return trip to Kansas at the time of the accident, and that, with TransAm's permission, Gouvion drove TransAm's truck the entire time he was in California, including when he was "off duty" and on a personal errand at the time of the accident. Thus, plaintiffs argue, Gouvion was acting *for the benefit* of TransAm the entire time he was in California. We disagree.

Plaintiffs' arguments disregard the undisputed evidence that Gouvion was off duty for TransAm, and had been off duty for two days at the time of the accident. Even though TransAm routinely permitted its drivers to use its trucks to stop at grocery stores before they stopped for the night on out-of-town trips, none of the evidence, viewed in the light most favorable to plaintiffs, indicates that Gouvion was conducting any business for TransAm at, or at any time near, the time of his May 29, 2015 grocery store trip and accident with plaintiffs. " '[R]espondeat superior liability is not synonymous with strict liability. The employer is not liable for every act of the employee committed during working hours.' " (*Miller v. American Greetings Corp.* (2008) 161 Cal.App.4th 1055, 1065; *Halliburton*, *supra*, 220 Cal.App.4th at p. 101 ["[T]he general rule is that, when an employee is traveling to or from lunch, even in the employer's vehicle, and performing no services for the employer, he is not acting within the scope of his employment."].)

To be sure, the record does not indicate what Gouvion was doing in Fontana on May 29, 2015, or when he was expected to return to duty for TransAm after May 29. But

21

at trial, plaintiffs would have the burden of showing by a preponderance of the evidence that Gouvion was acting within the scope of his employment at the time of the accident. (*Moreno*, *supra*, 30 Cal.App.5th at p. 576.) And, as noted, no evidence indicates that Gouvion was acting within the scope of his employment for TransAm at the time of the May 29 accident.

Here, as in *Halliburton*, the respondeat superior doctrine does not apply because Gouvion's trip to the grocery store "was entirely personal" and was "not made in the furtherance of any business activity of the employer." (*Halliburton*, *supra*, 220 Cal.App.4th at p. 102.) Thus, the risk of the accident that occurred when Gouvion was driving to or from the grocery store was "not a risk inherent in, or ' " 'typical of or broadly incidental' to" ' " TransAm's interstate trucking enterprise. (*Ibid.*) This is so, even though the accident would not have occurred had TransAm not made its truck available to Gouvion for Gouvion's personal use while Gouvion was off duty for TransAm but still in California on his interstate trip for TransAm. (*Gipson v. Davis Realty Co.* (1963) 215 Cal.App.2d 190, 209 (*Gipson*).)

As *Gipson* explained: The "employer is not liable for the acts of his . . . employee while the latter is pursuing his own ends, *even though the injury complained of could not have been committed without the facilities afforded to the . . . employee by his relation to his . . . employer.* [Citation.] Therefore, whether or not the . . . employer is responsible for the act of the . . . employee at the time of the injury depends upon whether the . . . employee was engaged at that time in the transaction of the business of his . . . employer, or whether he was engaged in an act which was done for his own personal convenience or

22

accommodation and related to an end or purpose exclusively and individually his own." (*Gipson*, *supra*, 215 Cal.App.2d at p. 209, italics added.)

Plaintiffs more generally argue that the order granting TransAm's motion "flies in the face of justice and promotes avenues for interstate trucking companies to avoid responsibility for [their] driver[s'] negligence while on the road for the company's benefit, leaving innocent persons without recourse for injuries caused." The argument, too, disregards the limited scope and application of the respondeat superior doctrine. As explained, the doctrine applies only to torts committed *within the scope* of the employee's employment, and "[i]f an employee's act is purely personal, it is not 'typical of or broadly incidental to the employer's enterprise,' " and is not within the scope of the employment. (*Sunderland*, *supra*, 130 Cal.App.4th at pp. 7-11; *Halliburton*, *supra*, 220 Cal.App.4th at pp. 102-103.)

Plaintiffs' argument also conflates the more limited respondeat superior doctrine and its scope-of-employment rule, with the broader, " ' " 'course of employment' " ' " rule that applies in the workers' compensation law. (*Sunderland*, *supra*, 130 Cal.App.4th at pp. 10-11.) As *Sunderland* explained, "the 'scope of employment' requirement of the respondeat superior doctrine is not identical to the ' " 'arising out of and in the course of employment' " ' test of workers' compensation law." (*Id*. at p. 10.)

*Sunderland* also held that the " 'commercial traveler rule,' " which applies in the context of the workers' compensation law, does not apply to create respondeat superior tort liability. (*Sunderland*, *supra*, 130 Cal.App.4th at p. 10.) "The 'commercial traveler rule' states: ' "As a general rule, a commercial traveler is regarded as acting within the

23

course of his employment during the entire period of his travel upon his employer's business. His acts in traveling, procuring food and shelter are all incidents of the employment, and where injuries are sustained during the course of such activities, the Workmen's Compensation Act applies." ' " (*Ibid*.) In contrast, the respondeat superior doctrine does not apply to torts that an employee may commit *during the entire period* that the employee is traveling on the employer's business. (*Id.* at pp. 10-11; see *Halliburton*, *supra*, 220 Cal.App.4th at pp. 97-103.)

3. <u>None of the Exceptions to the "Going and Coming" Rule Apply</u>

Plaintiffs further argue TransAm is vicariously liable for plaintiffs' injuries under several exceptions to the going and coming rule, including the special risk, dual or combined purpose, and incidental benefit exceptions. We begin with the rule itself. " 'Under the "going and coming" rule, an employee going to or coming from work is ordinarily considered outside the scope of employment so that the employer is not liable for his torts.' " (*Halliburton*, *supra*, 220 Cal.App.4th at pp. 95-96.)

"One exception to the going and coming rule has been recognized when the commute involves ' "an incidental benefit to the employer, not common to commute trips by ordinary members of the work force." ' " (*Halliburton*, *supra*, 220 Cal.App.4th at p. 96.) "Where the incidental benefit exception applies, the employee's commute directly between work and home is considered to be within the scope of employment for respondeat superior purposes. Minor deviations from a direct commute are also included, but there is no respondeat superior liability if the employee substantially departs from the

24

employer's business or is engaged in a purely personal activity at the time of the tortious injury." (*Id*. at p. 97.)

Here, neither the going and coming rule nor its incidental benefit exception apply, just as they did not apply in *Halliburton*. (*Halliburton*, *supra*, 220 Cal.App.4th at pp. 102-103.) Like the employee in *Halliburton*, Gouvion was not commuting to or from work at the time of the accident. Rather, he was off duty and was driving TransAm's truck on a purely personal errand, which had nothing to do with TransAm's interstate trucking business or the delivery of any cargo. (See *id*. at pp. 102-103.) Thus, Gouvion's personal errand, and the accident with plaintiffs, did not occur within the scope of Gouvion's employment for TransAm. (*Halliburton*, at p. 103; cf. *Moradi v. Marsh USA, Inc*. (2013) 219 Cal.App.4th 886, 891-892, 895, 904-905 [The incidental benefit or " 'required vehicle' " exception to the going and coming rule applies when the employee's use of his or her own vehicle gives some " 'incidental benefit' " to the employer.].)

The "dual or combined purpose exception" to the going and coming rule is substantially identical to the incident benefit exception, and likewise does not apply. The dual purpose exception is said to apply " ' " where the employee is combining his own business with that of his employer, or attending to both at substantially the same time . . . ." ' " (See *Farmers*, *supra*, 11 Cal.4th at p. 1004.) In such circumstances, " ' "no nice inquiry will be made as to which business [the employee] was actually engaged in at the time of the injury, unless it clearly appears that neither directly nor indirectly could [the employee] have been serving his employer." ' " (*Ibid*.) Here, it clearly appears that

25

Gouvion was not conducting any business for TransAm nor doing anything conferring an incidental benefit to TransAm when he was traveling to or from the grocery store at the time the accident.

The special risk exception also does not apply. "The work-related, special risk exception to the going and coming rule 'applies when an employee endangers others with a risk arising from or related to work.' " (*Lynn v. Tatitlek Support Services, Inc.* (2017) 8 Cal.App.5th 1096, 1112-1113.) "Respondeat superior liability under the special risk exception ' " is properly applied where an employee undertakes activities within his or her scope of employment that cause the employee to become an instrumentality of danger to others even where the danger may manifest itself at *times and locations remote from the ordinary workplace*." ' " (*Id.* at p. 1113.)

Thus, the special risk exception to the going and coming rule has been applied when an employee caused a car accident on the way home from work after drinking alcohol at work with the employer's permission. (*Childers v. Shasta Livestock Auction Yard* (1987) 190 Cal.App.3d 792, 804-806.) "So long as the [special] risk is created within the scope of the employee's employment, the scope of employment must follow the risk so long as [the risk] acts proximately to cause injury." (*Bussard v. Minimed, Inc.* (2003) 105 Cal.App.4th 798, 805-806 [An employee's exposure to pesticides at work, which made her dizzy and resulted in her causing a car accident on her way home from work, was a special risk created within the scope the employment.].)

Plaintiffs argue that driving a tractor trailer truck "is a special risk[;] it is inherently dangerous requiring special skills, training and even a special commercial

26

driver's license." But driving a large, tractor trailer truck does not present a special risk of injury to the public, particularly when, as here, the driver had a commercial driver's license and was qualified to drive the truck. Moreover, there is no evidence that Gouvion was " ' "an instrumentality of danger" ' " to others at the time of the accident, based on anything that occurred within the scope of his employment for TransAm. (See *Lynn v. Tatitlek Support Services*, *Inc.*, *supra*, 8 Cal.App.5th at p. 1113.)

4. <u>The Two-part Test for Respondeat Superior Liability Is Not Satisfied</u>

Plaintiffs also point out that "some courts employ a two-prong test to determine whether an employee's conduct was within the scope of his employment for purposes of respondeat superior liability, asking whether ' " (1) the act performed was either required or 'incident to his duties' [citation] or (2) the employee's misconduct could be reasonably foreseen by the employer in any event." ' " (*Halliburton*, *supra*, 220 Cal.App.4th at pp. 94, 103.) If the employee's act falls within either prong, the respondeat superior doctrine applies. (*Id*. at p.103.) Like the plaintiffs in *Halliburton*, plaintiffs here suggest that foreseeability is the central or critical question in determining whether the respondeat superior doctrine applies, but the question of foreseeability cannot be viewed separately from the fact that Gouvion was off duty and engaged in a personal errand at the time of the accident. (*Ibid*.)

Foreseeability as a test for respondeat superior liability in the second prong of the two-part test is distinct from foreseeability as a test for negligence. (*Halliburton*, *supra*, 220 Cal.App.4th at p. 94; *Farmers*, 11 Cal.4th at p. 1004.) As a test for respondeat superior liability, foreseeability " 'merely means that *in the context of the particular*

27

*enterprise*[,] an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Farmers*, at pp. 1003-1004.)

Plaintiffs argue that both prongs of the two-prong "*Halliburton* test" are satisfied here, but we disagree. Neither prong is satisfied. In fact, "under either prong of the two-prong test, or under a general foreseeability test, both foreseeability and a nexus between the tortious act and the employment are required." (*Halliburton*, *supra*, 220 Cal.App.4th at p. 103.) As *Halliburton* explained, " 'Respondeat superior liability demands a nexus between the employee's tort and the employment to ensure that liability is properly placed on the employer. "The nexus required for respondent superior liability—that the tort be engendered by or arise from the work—is to be distinguished from 'but for' causation. That the employment brought tortfeasor and victim together in time and place is not enough. We have used varied language to describe the nature of the required additional link (which, in theory, is the same for intentional and negligent torts): the incident leading to injury must be an 'outgrowth' of the employment . . . ; the risk of tortious injury must be ' "inherent in the working environment" ' . . . or ' "typical of or broadly incidental to the enterprise [the employer] has undertaken." ' . . . " [Citation.] Yet another way to describe the necessary linkage is the employee's tort must be "foreseeable *in light of [the employee's] duties*." ' " (*Halliburton*, *supra*, 220 Cal.App.4th at pp. 103-104, quoting *Bailey v. Filco*, *Inc.* (1996) 48 Cal.App.4th 1552, 1560 (*Bailey*).)

28

Further, if the first prong of the two-prong test is satisfied—if the employee's injury-causing act is either required or incident to the employee's duties—then both the nexus and the respondeat superior foreseeability requirements are also satisfied. (*Halliburton*, *supra*, 220 Cal.App.4th at p. 104; *Bailey*, *supra*, 48 Cal.App.4th at p. 1561.) That is, if the employee's injury-causing act is either required or incident to the employee's duties, then the act would not be, in the words of the foreseeability-based test—so unusual or startling that it would seem unfair to appropriate the resulting loss to the employer; and any resulting tort could " ' " 'fairly be regarded as typical of or broadly incidental to' " ' " the employer's enterprise. (*Halliburton*, at p. 104.) The foreseeability-based test also involves a nexus requirement for liability, and is not satisfied based on " ' " 'but for' " ' " causation. (*Ibid*.) Thus, " 'the foreseeability-based test and the two-prong test are not so much different tests, but different ways of articulating the same test for scope of employment.' " (*Halliburton*, at p. 104, quoting *Bailey*, at p. 1561.)

Here, as in *Halliburton*, the undisputed facts do not support a nexus between Gouvion's personal errand of driving TransAm's truck to or from a grocery store and TransAm's interstate trucking business. (*Halliburton*, *supra*, 220 Cal.App.4th at p. 104.) To be sure, Gouvion had TransAm's permission to use TransAm's truck for personal errands while Gouvion was in California on TransAm's business, including while Gouvion was off duty before he returned to Kansas. It was also generally foreseeable to TransAm, and even expected by TransAm, that Gouvion would use TransAm's truck to drive to grocery stores and for other personal errands. As plaintiffs point out, Gouvion

29

was "required to be out of town by the very nature of TransAm's interstate trucking business."

But to say that Gouvion's use of TransAm's truck for his personal grocery store errand was an outgrowth of his *employment*, was inherent in his *working environment*, or was typical or broadly incidental to TransAm's interstate trucking *enterprise*, would transform the respondeat superior doctrine into a but for causation test, which it is not. (*Halliburton*, *supra*, 220 Cal.App.4th at p. 103 [" ' "That the employment brought tortfeasor and victim together in time and place is not enough" ' " to establish respondeat superior liability against the employer].) It would mean that TransAm would be vicariously liable for any and all torts its drivers commit, while off duty and using TransAm's trucks for personal errands, provided the drivers commit the torts *any time before or after* the drivers conduct TransAm's business in California.

This would be inconsistent with the settled principle that, "[i]f an employee's act is purely personal, it is not 'typical of or broadly incidental to the employer's enterprise.' " (*Sunderland*, *supra*, 130 Cal.App.4th at p.11; *Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 140 ["Where an employee pursues his own ends, the use of property or facilities entrusted to him by the principal is an inadequate basis for imputing liability to the employer . . . ."]; *Le Elder v. Rice* (1994) 21 Cal.App.4th 1604, 1607 ["Where the employee's conduct has substantially deviated from his or her duties, it is unjust to hold the employer liable."]; *Harris v. Oro-Dam Constructors* (1969) 269 Cal.App.2d 911, 916 ["[T]he employer is not liable when the employee is pursuing 'his own ends.' "].)

30

In sum, because the accident with plaintiffs occurred while Gouvion was using TransAm's truck on a purely personal errand, which had nothing to do with TransAm's interstate trucking business, TransAm is not vicariously liable to plaintiffs for Gouvion's negligence, if any, in causing the accident under the respondeat superior doctrine.

C. *TransAm Was Not Negligent in Hiring, Supervising, or Entrusting Its Tractor-trailer Truck to Gouvion*

Plaintiffs claim there are triable issues of material fact concerning the second theory of negligence liability alleged in their first cause of action for general negligence, namely, that TransAm was negligent in hiring, supervising, and entrusting its tractor trailer truck to Gouvion. Plaintiffs argue that a reasonable trier of fact could conclude, based on all of the evidence, that TransAm was negligent in hiring, supervising, and entrusting its truck to Gouvion. We disagree.

A claim that an employer was negligent in hiring, supervising, or retaining an employee requires proof that the employer knew or should have known that the employee *was or became unfit or incompetent, and that this unfitness or incompetence posed a particular risk to others*. (CACI No. 426 [negligent hiring, supervision, or retention of employee].) Likewise, a claim that a defendant was negligent in entrusting a motor vehicle to another requires proof that the defendant knew or should have known that the driver was unfit or incompetent to drive the vehicle. (CACI No. 724 [negligent entrustment of motor vehicle]; see *Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1157 [constructive or actual awareness that a person is unfit or incompetent to drive underlies claim that a defendant was negligent in hiring or retaining that person as a driver, and the

31

same awareness underlies claim that the defendant was negligent in entrusting a vehicle to that driver].)

The heart of plaintiffs' negligent hiring, supervision, and entrustment claim is that TransAm knew or should have known that Gouvion was incompetent or unfit to drive a tractor trailer truck to California in May 2015. Plaintiffs also allege that TransAm negligently failed to adequately train Gouvion as a tractor trailer truck driver and to supervise him during his May 2015 trip to California. But TransAm adduced undisputed evidence that it was not negligent in any of these respects, and plaintiffs' opposition did not show that there is a triable issue of material fact indicating that TransAm was negligent in any of these respects.

TransAm showed that there was nothing in Gouvion's background to suggest that he was unfit or incompetent to drive a tractor-trailer truck, either before he was hired or before the May 29, 2015 accident with plaintiffs. In March 2015, Gouvion turned age 22 and obtained his commercial driver's license. Before TransAm hired Gouvion on April 1, 2015, TransAm required Gouvion to pass a "comprehensive drug test" and confirmed that he was not disqualified to work as a commercial driver under applicable federal regulations. (49 C.F.R. 391.15.) TransAm also reviewed Gouvion's driving record, confirmed that his personal and commercial driver's licenses had never been suspended, and provided him with "entry level" driver training in accordance with applicable federal regulations. (49 C.F.R. 380.503.)

TransAm also hired an employee screening company to further investigate Gouvion's driving record and criminal background. (See *Evan F. v. Hughson United*

32

*Methodist Church* (1992) 8 Cal.App.4th 828, 842-843 ["If . . . the work is likely to subject third persons to serious risk of great harm, [the employer has] a special duty of investigation." (Italics omitted.)].) Through this process, TransAm discovered that Gouvion did not have a criminal record but had two prior traffic citations: (1) a speeding ticket for traveling 10 miles an hour above the speed limit on June 17, 2012, and (2) a citation for failing to yield the right of way on April 23, 2013. In his employment application, Gouvion reported having caused one "preventable," side-swipe collision on May 25, 2014, which did not involve any injuries. He was not cited in connection with that accident. Gouvion had no citations, arrests, or accidents during the time he worked for TransAm, beginning on April 1, until the May 29, 2015 accident with plaintiffs.

While its drivers were on the road, TransAm monitored their locations through a GPS tracking device. TransAm's GPS device showed that Gouvion was in Wilmington, California, on May 26, 2015—the "endpoint for his load"; and other evidence showed that Gouvion dropped his cargo in Wilmington on that day. TransAm gave Gouvion written permission to take Ms. S. along with him on his May 2015 trip from Kansas to California, and federal regulations did not allow "unauthorized passengers" to be transported without the carrier's written permission. (49 C.F.R. 392.60.)

TransAm's initial showing supports a finding that TransAm was not negligent in hiring, supervising, or in entrusting its tractor trailer truck to Gouvion during his May 2015 trip to California. Based on the same evidence, plaintiffs argue that a jury could reasonably find that TransAm was negligent in hiring Gouvion, and that TransAm

was also negligent in supervising and entrusting its tractor trailer truck to Gouvion both before and at the time of the May 29, 2015 accident with plaintiffs. We disagree.

To prove their negligent hiring, supervision, and entrustment claims at trial, plaintiffs would have the burden of proving by a preponderance of the evidence that TransAm knew or should have known that Gouvion was or became unfit to drive a tractor trailer truck at the time of the accident, and that based on Gouvion's unfitness, TransAm knew or should have known that Gouvion posed a particular risk of harm to others. (See CACI Nos. 426, 724; *Aguilar*, *supra*, 25 Cal.4th at p. 851.)

Regarding their negligent hiring claim, plaintiffs point out that Gouvion was a young and inexperienced driver when he was hired, and less than one year earlier, in May 2014, he caused a side-swipe accident similar to the accident he caused with plaintiffs, in that the prior accident also involved an "illegal and dangerous lane change." Plaintiffs also note that, in his employment application, Gouvion provided "vague and/or incomplete" prior employment contact information, and "no personal references." Under a heading titled, "personal references not related to you," Gouvion wrote that he no longer had contact with anyone he "used to know."

None of this evidence reasonably indicated to TransAm that Gouvion was *unfit or incompetent* to be hired to drive its truck, either when TransAm hired him on April 1, 2015, or at the time of the May 29, 2015 accident with plaintiffs. (CACI No. 426.) That Gouvion was a young and inexperienced driver, and had two prior traffic citations and one prior side-swipe accident, did not indicate that Gouvion was unfit or incompetent to drive a TransAm truck, either at the time he was hired or at the time of the accident,

34

given that Gouvion had a commercial driver's license, had passed a comprehensive drug test, and had completed entry level driver training in accordance with applicable federal regulations. (49 C.F.R. 380.503.) In fact, there is *no evidence* that TransAm knew or reasonably should have known that Gouvion was unfit or incompetent to drive one of TransAm's trucks, and/or that Gouvion posed a particular risk of harm to others, at any time before the May 29, 2015 accident.

Regarding negligent supervision and entrustment, plaintiffs point out that Gouvion was in an "unfamiliar area" when the accident occurred, that TransAm allowed Gouvion to take Ms. S. with him on his trip from Kansas to California, allowed Gouvion and Ms. S. to smoke in TransAm's truck, and allowed Gouvion to use the truck "to go [grocery] shopping at night." Again, none of this evidence shows that TransAm knew or should have known that Gouvion was unfit or incompetent to drive its truck, either before or at the time of the accident, or that Gouvion posed a particular risk to others, before or at the time of the accident. (CACI Nos. 426, 724.)[4]

---

**4** Plaintiffs also argue that TransAm negligently entrusted its truck to Gouvion because Gouvion did not have any "individual liability insurance" for operating TransAm's truck at the time of the collision. Plaintiffs rely on Gouvion's response to a form interrogatory, stating it was "unknown at this time" whether there was in effect any policy of insurance through which Gouvion was or might be insured for plaintiffs' claims. Plaintiffs also point to TransAm's response to the same interrogatory, stating "on information and belief, no," TransAm did not have any insurance covering plaintiffs' claims. But whether Gouvion or TransAm had any liability insurance covering plaintiffs' claims is inadmissible to show that TransAm was negligent in either hiring, supervising, or entrusting its truck to Gouvion, or in any other respect. (Evid. Code, § 1155; see *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 311.)

To be sure, it is evident TransAm did not have a policy prohibiting its drivers from taking *authorized* passengers on out-of-town trips with them, given that TransAm gave Gouvion written permission to take Ms. S. with him on his May 2015 trip to California, in accordance with applicable federal regulations allowing drivers to take passengers with them with the carrier's written permission. (49 C.F.R. 392.60.) But a driver and an adult, authorized passenger on an interstate trip in a tractor trailer truck does not pose a particular risk of harm to others on the road.

And, assuming that TransAm did not have a policy prohibiting its drivers or their passengers from lighting cigarettes and smoking cigarettes while driving or riding in its trucks, two adults, riding together in a tractor trailer truck at night, while lighting and smoking cigarettes, also does not pose a particular risk of harm to others on the road. Drivers can be distracted by many things in the cab of a tractor trailer truck. That Gouvion's and Ms. S.'s lighting and smoking cigarettes may have contributed to the accident with plaintiffs by distracting Gouvion from his driving, does not mean that smoking and lighting cigarettes while driving, even at night, poses a *particular* risk of harm to others. (CACI No. 426.) Moreover, plaintiffs have pointed to no authority prohibiting smoking in this context.

In sum, TransAm adduced sufficient evidence to support a finding that it was not negligent in hiring, in supervising, or in entrusting its truck to Gouvion. This shifted the burden to plaintiffs to demonstrate a triable issue of material fact supporting their negligent hiring, supervision, or entrustment claim against TransAm, but plaintiffs did

36

not meet this burden. None of the evidence supports a reasonable inference that TransAm was negligent in hiring, supervising, or entrusting its truck to Gouvion.

D. *The Court Complied with Section 437c, Subdivision (g)*

Plaintiffs claim the trial court's order granting TransAm's motion fails to comply with section 437c, subdivision (g). The statute provides, in relevant part, that, "Upon the grant of a motion for summary judgment on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of and, if applicable, in opposition to the motion that indicates no triable issue exists." (§ 437c, subd. (g).)

Plaintiffs argue the trial court "recited in general its conclusions and listed certain evidence," but "failed to specify the reasons why the stated evidence shows no triable issues of material fact exist." The court is not required, however, to "specify the reasons why the stated evidence shows no triable issues of material fact exist." Rather, the court is only required to "specify the reasons for its determination" that there is no triable issue of material fact and "specifically refer to the evidence . . . that indicates no triable issue exists. (§ 437c, subd. (g).)

The court met these requirements. In its written order granting the motion, the court stated that there was no triable issue of material fact because "TransAm has met its burden of establishing that, based upon the undisputed facts, Gouvion was not within the scope of employment at the time of the accident, and [TransAm] was not negligent in the hiring or supervising of Gouvion, or entrusting Gouvion with its vehicle." The order also

37

referred to the evidence indicating that no triable issue existed: "Declarations of [D.C. and R.M.]; Driver's Daily Logs; Tyson Food Documents; Gouvion Driver Qualification File and Personnel File." The court did not specify, but was not required to specify, why this "stated evidence" showed there was no triable issue of material fact. (§ 437c, subd. (g).)

Even if the trial court had failed to comply with section 437c, subdivision (g), the error would not require reversal. The trial court's "failure to perform its statutory duty [to provide a statement of the reasons for its determination] does not automatically result in reversal. We need only determine whether the record establishes [TransAm's] entitlement to summary judgment in [its] favor. . . . 'We are not confined, in considering the granting of the summary judgment, to the sufficiency of the stated reasons. It is the validity of the ruling which is reviewable and not the reasons therefor.' " (*Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624, 1627-1628.) For the reasons explained, the ruling granting summary judgment in favor of TransAm is valid.

E. *The Court Did Not Abuse Its Discretion in Denying Plaintiffs' Continuance Request*

In their opposition, plaintiffs asked the court to deny the motion or continue it for an unspecified period of time to allow plaintiffs to conduct additional discovery. Plaintiffs claimed that TransAm "refused to produce documents, some of which it now relies on," to support its motion, and argued, "a continuance should be granted to allow for discovery that may exist to support opposition. Specifically, the depositions of Gouvion, the TransAm declarants, and the PMKs [persons most knowledgeable] specific to the issues raised. In addition, the documents previously requested as well as

38

interrogatories and requests for admissions will shed light on the issues raised in this motion."

In a declaration opposing the motion, plaintiffs' counsel detailed "yet to be completed discovery" concerning the scope of employment and negligent hiring, supervision, and entrustment issues raised in the motion. This discovery included "[t]he reasons why Gouvion did not turn around sooner and return to home base"; "[t]he prior incidents of permitting drivers to use a tractor-trailer to run personal errands"; the payment of Gouvion for lodging, meals, and incidentals while on the road; and "[e]vidence of the routes driven and basis therefore during, before, and after the period of personal conveyance." The uncompleted discovery also included "details" concerning Gouvion's "experience," training, employment, criminal background check, and termination by TransAm, along with "DashCam video of prior trips," Gouvion's personnel file, and written policies concerning "female or other companions riding in the TransAm tractor" and smoking inside TransAm tractors.

At the hearing on the motion, the trial court denied plaintiffs' continuance request, noting that plaintiffs had more than two years to discover the evidence they were then claiming they needed to oppose the motion. In this appeal, plaintiffs claim the trial court erroneously denied their continuance request. They point out that at the time of the motion, they still had questions about what Gouvion was doing in Fontana on May 29, 2015, three days after he delivered his cargo in Wilmington on May 26; whether Gouvion was carrying any cargo at the time of the May 29 accident; what day Gouvion was planning to return to Kansas; and whether TransAm was paying or reimbursing

39

Gouvion for his traveling expenses on May 29, including his hotel, grocery, fuel, and other expenses.

Section 437c, subdivision (h), provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist *but cannot*, *for reasons stated, be presented*, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. . . ." (Italics added.)

The decision to grant or deny a request for a continuance under section 437c, subdivision (h), is vested in the trial court's discretion, and we review the court's decision for an abuse of discretion. (*Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 152.) These continuance requests are to be liberally granted, and such continuances are "virtually mandated ' " upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion." ' " (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395.) The affidavit is required to show: " ' (1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain [or discover) these facts.' " (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633.) The latter showing was not made here.

A party's lack of diligence in seeking discovery is a valid ground for denying the party's continuance request under section 437c, subdivision (h). (*Braganza v. Albertson's LLC*, *supra*, 67 Cal.App.4th at p. 155; *Cooksey v. Alexakis* (2004)

123 Cal.App.4th 246, 255-257 ["A good faith showing that further discovery is needed to oppose summary judgment requires some justification for why such discovery could not have been completed sooner."].) Plaintiffs' counsel's declaration in support of the continuance request did not explain why the various areas of discovery that plaintiffs wanted to pursue to support their opposition could not have been completed sooner, or why plaintiffs did not move to compel TransAm to submit further responses to plaintiffs' previous discovery, if, as plaintiffs claimed, TransAm had previously refused to produce documents in its prior discovery responses. This failure to explain why the discovery could not have been completed sooner was fatal to plaintiffs' continuance request.

The record also indicates that plaintiffs could offer no justification as to why they could not have completed the additional discovery sooner. Plaintiffs filed their complaint on May 24, 2017, nearly two years after the May 29, 2015 accident. TransAm filed its motion on September 4, 2019, and the hearing on the motion was held on December 17, 2019. Thus, plaintiffs had more than two years three months to conduct discovery before TransAm filed its motion. But TransAm points out that plaintiffs did not take a single deposition in the case—even after TransAm filed its motion and before plaintiffs' opposition was due.

There is no apparent reason why plaintiffs did not depose Gouvion, the two TransAm declarants, D.C., and R.M., or any other PMK's "specific to the issues raised" before TransAm filed its motion, or at least before plaintiffs' opposition to the motion was due. Plaintiffs also had ample time to seek further responses to its previous written discovery, both before the motion was filed and before plaintiffs' opposition was due. In

41

sum, because plaintiffs offered no explanation as to why the specified discovery could not have been completed sooner, the court did not abuse its discretion in denying plaintiffs' request to continue the motion to allow plaintiffs to conduct the further discovery.

F. *Plaintiffs' Owner/Permissive User Claim, Alleged in the Second Cause of Action, Remains Viable Against TransAm* (*Veh. Code*, §§ *17150*, *17151*)

Lastly, plaintiffs claim the court erroneously granted summary judgment against TransAm on the entire complaint because TransAm's motion did not address the allegation, in the second "motor vehicle" cause of action, that TransAm was the owner of the vehicle that Gouvion was driving, and that Gouvion had TransAm's permission to operate the vehicle at the time of the accident. (Veh. Code, § 17150.) We agree.

Vehicle Code section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner." Owner liability under the statute is not based on the owner's negligence. "[S]uch an owner becomes liable even though he is without fault in causing the accident." (*Rashtian v. BRAC-BH, Inc.* (1992) 9 Cal.App.4th 1847, 1852.)

Under Vehicle Code section 17151, subdivision (a), the liability of an owner "not arising through the relationship of principal and agent or master and servant is limited to the amount of fifteen thousand dollars ($15,000) for the death of or injury to one person in any one accident, and subject to the limit as to one person, is limited to the amount of

42

thirty thousand dollars ($30,000) for the death of or injury to more than one person in any one accident and is limited to the amount of five thousand dollars ($5,000) for damage to property of others in any one accident."

TransAm's motion did not address the owner/permissive user allegation of the second "motor vehicle" cause of action. Nor did TransAm's motion attempt to show that Gouvion was not negligent in operating TransAm's truck at the time of the accident. Instead, the motion was solely directed to the two theories of negligence liability alleged against TransAm in the first and second causes of action: (1) vicarious liability for Gouvion's negligence, if any, under the respondeat superior doctrine, and (2) direct liability for TransAm's own negligence in hiring, supervising, and entrusting its vehicle to Gouvion.

Thus, we agree with plaintiffs that TransAm's motion for summary judgment on the entire complaint should have been denied. (§ 437c, subd. (a)(1).) Instead, the court should have granted TransAm's motion for summary adjudication of the first cause of action for general negligence and denied its motion for summary adjudication of the second cause of action. (*Id*. at subd. (f)(1).) The owner/permissive user theory of liability (Veh. Code, § 17150), alleged in the second cause of action, remains viable against TransAm. But given our conclusions that Gouvion was not acting within the scope of his employment at the time of the accident, and that TransAm was not negligent in hiring, supervising, or entrusting its vehicle to Gouvion, plaintiffs may no longer advance these theories of liability against TransAm. Plaintiffs were not required to address the owner/permissive user theory in their opposition to summary judgment below

43

or on appeal, as TransAm suggests, because TransAm's motion for summary judgment did not seek to adjudicate the owner/ permissive user claim.

## IV.  DISPOSITION

The judgment is reversed.  The matter is remanded with directions to issue a new order granting TransAm's motion for summary adjudication of plaintiffs' first cause of action for general negligence, but denying TransAm's motion for summary adjudication of plaintiffs' second "motor vehicle" cause of action, and denying TransAm's motion for summary judgment on the entire complaint.  The parties shall bear their respective costs on appeal.  (Cal. Rules of Court, rule 8.278.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS          <br>J.

We concur:

RAMIREZ       
P. J.

MENETREZ     
J.